**REITEN and Stewart, Appellants,**

v.

**Roy HENDRICKS et al., Appellees.**

**No. 82.**

Supreme Court of Alaska.

March 1, 1962.

Rehearing Denied April 11, 1962.

Wendell P. Kay, Anchorage, for appellants.

John C. Hughes, of Hughes & Thorsness, Anchorage, for appellees.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

Roy Hendricks, as plaintiff below, filed suit on January 14, 1957, against Alaska Freight Lines, Inc. (hereinafter referred to as Alaska Freight), for damages to, and loss of earnings of, his truck and lowboy in the sum of $6,745.60. He had loaned the equipment to the defendants Reiten and Stewart, joint venturers, who were using it on November 9, 1956, the time of the

incurrence of the damages, to transport a front end loader on an Alaska highway. The damages to plaintiff's equipment are alleged to have resulted from a collision between it and a motor van owned by the defendant Alaska Freight and to have been caused by the negligent and unlawful operation of the motor van by Silas N. Kemp, the driver thereof, acting within the scope of his employment by Alaska Freight.

In a second cause of action in the same case Hendricks sought to recover the identical sum of $6,745.60 from Reiten and Stewart for their failure to return the truck and lowboy in as good condition as they were at the time they were borrowed.

Alaska Freight answered, denying negligence on its part and charging the entire blame for the damages claimed by the plaintiff to the negligence of Reiten and Stewart and to their contributory negligence and that of the plaintiff. Alaska Freight also cross-claimed against Reiten and Stewart for the damages done to its van and for $14,400 which it was required, under The Workmen's Compensation Act of Alaska, to pay to the survivors of its driver Kemp who died as a result of the collision.

Reiten and Stewart likewise answered and cross-claimed. Among other things, they denied any liability for the damages claimed to have been suffered by the plaintiff but attributed them to the negligence of Alaska Freight and asserted that any negligence alleged against them in Alaska Freight's cross-claim was not the proximate cause of the damages. In their own cross-claim they ask for damages from Alaska

Freight, caused them by the delay resulting from the accident. Alaska Freight denied the allegations in support of the damages claimed.

On February 1, 1959, prior to trial, Reiten and Stewart moved for judgment on the pleadings against the cross-claim of Alaska Freight on the ground that such claim could be asserted only in the name of the personal representative of the deceased employee. The United States District Court for the District (Territory) of Alaska denied the motion.[1]

Trial by jury was had in September, 1960 in the Superior Court for the State of Alaska, Third District,[2] and a verdict was returned for the plaintiff Hendricks and against Reiten and Stewart for $1,000 and for Alaska Freight on its cross-claim against Reiten and Stewart for $10,000. Judgment was entered accordingly; but later, on motion of Alaska Freight, the trial judge entered judgment, notwithstanding the verdict, and increased the award on the cross-claim to $15,000. Reiten and Stewart have appealed from the final judgment so entered.

The first error specified by Reiten and Stewart in their brief is that the district court erred in refusing to grant their motion for judgment on the pleadings, thus permitting Alaska Freight to cross-claim in its own name for the death of Silas Kemp. Reiten and Stewart contend that an employer who has been subrogated, under The Workmen's Compensation Act of Alaska[3] to the rights of his deceased employee may maintain an action against a

1. An alternative of the motion was for judgment of dismissal of Alaska Freight's cross-claim. This was also denied.

2. After the coming of statehood to Alaska, this case was transferred on February 20, 1960 from the United States District Court to the Superior Court of the state.

3. The Workmen's Compensation Act of Alaska, in effect at the time of Kemp's death and the commencement of this action, is set forth in §§ 43–3–1 through 43–3–39, A.C.L.A.1949. Section 43–3–30

of the act relates to the liability of third party tortfeasors and the subrogation rights of the employer against such third parties and provides as follows:

"Where the injury for which compensation is payable hereunder was caused under circumstances creating a legal liability in someone other than the employer to pay damages in respect thereof, the employee may take proceedings against the one so liable to pay damages and against any one liable to pay compensation under this Act, but shall not be entitled to receive both damages and com-

third party tortfeasor only in the manner set forth in the wrongful death statute of Alaska,[4] which provides that "the personal representative" of the decedent "may maintain an action" for the latter's death. They argue that to permit Alaska Freight to assert the cross-claim in its own name would result in a splitting of one indivisible cause of action. There is authority in support of their position;[5] but we do not consider it necessary to dwell upon or here decide the particular issue raised, because Reiten and Stewart did not make their motion for judgment on the pleadings or to dismiss until after the statute of limitations had run against the personal representative.[6] So, under the circumstances of this case, there can be no split in the cause of action. If the trial court committed error for any reason in denying the motion, such error was harmless and we disregard it under Rule 61 of the Rules of Civil Procedure.[7]

Appellants specify as error the trial court's refusal to allow them to ask leading questions on cross-examination of Emmet Millhouse, one of Alaska Freight's witnesses. Not only is it generally the rule that leading questions may be asked of an adverse witness on cross-examination,[8] but in Alaska we have a statute to that effect.[9] However, in this case it could very well be that the court did not regard the witness in question as adverse to the appellants, because he was an employee of the appellants.[10] Actually, the court did not expressly rule out leading questions on cross-examination as is evident from the following colloquy between court and counsel for appellants:

"MR. ATKINSON: It's cross examination, Your Honor. Leading are permitted.

---

pensation. And if the employee has been paid compensation under this Act, the employer by whom the compensation was paid shall be entitled to indemnity from the person, firm or corporation so liable to pay damages as aforesaid and to the extent of such indemnity shall be subrogated to the rights of the employee to recover damages therefor."

4. The wrongful death statute applicable to this case is set forth in S.L.A.1955, chapter 153 (§ 61–7–3, A.C.L.A.Cum.Supp. 1957), and provides in part that:

"When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefore against the latter, if the former might have maintained an action, had he lived, against the latter for an injury done by the same act or omission. Such action shall be commenced within two years after the death, and the damages therein shall not exceed fifty thousand dollars, and the amount recovered, if any, shall be exclusively for the benefit of the decedent's husband or wife and children when he or she leaves a husband, wife, or children, him or her surviving * * *."

5. Komlos v. Compagnie Nationale Air France, 209 F.2d 436 (2d Cir. 1953), cert. denied 348 U.S. 820, 75 S.Ct. 31, 99 L.Ed. 646 (1954); 2 Larson, Workmen's Compensation Law, § 74.42 (1952).

6. The date of the accident out of which this controversy arose was November 9, 1956. Kemp, the employee, died on December 3, 1956, from the fatal injury received in the accident. The motion for judgment on the pleadings or to dismiss was not made until February 1, 1959, more than two years after Kemp's death.

7. Civ.R. 61 is entitled "Harmless Error" and provides in part that no error or defect in any ruling or order is ground for granting a new trial or disturbing a judgment or order unless refusal to take such action appears to the court inconsistent with substantial justice; and that the court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

8. 3 Wigmore, Evidence, § 773 (3rd ed. 1940).

9. Section 58–4–58 A.C.L.A.1949 provides that "the adverse party may cross-examine the witness as to any matter stated in his direct examination or connected therewith, and in so doing may put leading questions."

10. Millhouse was later called by the appellants as their witness, too.

"THE COURT: I think we'd better keep away from leading questions as possible, [*sic*] for all parties.

"MR. ATKINSON: Even on corss [*sic*] examination?

"THE COURT: Yes, even on cross. I'm not holding you strictly to that. I think it's best procedure on this case.

"MR. ATKINSON: It would appear to violate some of the—one of the allowable types of questions on cross examination.

"THE COURT: Well, you may proceed."

Furthermore, the record reveals that, even after these remarks by the trial court counsel for the appellants persisted in asking leading questions of the witness Millhouse and the court did not interfere. We find no prejudicial error in the trial court's comments.

■ Appellants next specify as error (1) the submission by the trial court of inconsistent and misleading instructions to the jury, and (2) the submission of an incomplete set of verdict forms. Appellants made no objection below to the instructions and verdict forms submitted. In the absence of a proper objection taken below, instructions and verdict forms will not be reviewed here [11] unless it appears to us after a reading of all the instructions that a miscarriage of justice may occur. The likelihood of such an occurrence is not apparent to us upon the face of the record. We therefore do not consider this specification.

■ Appellants next contend that the trial court erred in refusing to grant them

a new trial. The motion was grounded below upon the assertion that the jury failed to follow the instructions as to damages. The jury returned a verdict for $10,000 in favor of Alaska Freight. Appellants insist that the trial court clearly instructed the jury to find damages in the amount of $15,000 if they found liability. The verdict returned for $10,000, they argue, indicates that the jury reached a compromise verdict on the issue of liability.

By the fourth paragraph of its Instruction No. 22, the trial court instructed the jury as follows:

"If you find that the defendants Reiten and Stewart were negligent in the method and manner of operating the Diamond-T tractor and low boy trailer loaded with an HD9 front end loader, and if you further find that the negligence of Reiten and Stewart directly and proximately caused the injuries and ultimate death of Silas Kemp, then you are instructed that *you may find for the defendant and cross-claimant Alaska Freight Lines and against the defendants Bernard H. Reiten and Leonard L. Stewart in the amount of $15,000.00* for it has been stipulated that Alaska Freight Lines has paid to the widow of Silas Kemp the sum of $15,000.00 [12] by way of medical and other benefits under the Alaska Workmen's Compensation Act." [Emphasis supplied.]

The appellants insist that "while it is true that the trial judge used the permissive 'may' instead of the mandatory 'shall', a jury would certainly understand from the

---

11. Civ.R. 51 states, in pertinent part, that:
   " * * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * * "
   The record discloses that the verdict forms were submitted to counsel along with the instructions. Verdict forms, when used, are considered by us to con-

stitute an integral part of the instructions and as such are covered by the above quoted rule.

12. Although the complaint alleged that the amount paid to Kemp's widow by Alaska Freight was only $14,400, the parties stipulated at the pre-trial conference that the amount so paid was actually $15,000 and the latter payment figure became a part of the pre-trial order entered in the case. Both parties in their briefs accept the sum of $15,000 as the amount paid.

instruction as a whole that should they find in favor of Alaska Freight Lines, they were bound to fix damages at $15,000.00." We can find no such clear meaning in the instruction, even upon reference to other portions of the instruction.[13] In fact, this instruction as to the quantum of damages sustained was directly in keeping with the direction contained in preceding Instruction No. 21 wherein the jury were told:

> "If you find that the defendants Reiten and Stewart were in violation of one or more of the regulations [rules of the road] hereinabove recited at the time of the occurrence of the accident, and if you further find that the violation of one or more of said rules was a proximate cause or the proximate cause of the collision and the ultimate damage, then it is your duty and you are instructed to find in favor of the defendant Alaska Freight Lines and against the defendants Reiten and Stewart and you shall thence [*sic*] assess the damages in favor of Alaska Freight Lines *which shall not exceed $15,000.00* on defendant Alaska Freight Lines' first crossclaim. * * *" [Emphasis supplied.]

Under the instructions so given, the verdict could very well have been an honest effort on the part of the jury to determine the damages somewhere between one cent and the $15,000 ceiling specified in the instructions. We conclude that the several instructions on damages, taken together, permitted the jury to find damages for Alaska Freight in any amount not to exceed $15,000.[14] The instructions were given without objection by either party and without request for others. Accordingly, we find no basis for appellants' claim that the trial court should have granted them a new trial because the jury failed to follow the court's instructions as to damages.

■ Appellants lastly specify as error the trial court's grant of appellee's motion for judgment notwithstanding the verdict. The motion prayed that judgment be entered for $15,000 instead of upon the verdict returned for $10,000. Appellants argue that such an increase in the damages awarded amounts to additur and as such is in contravention of the constitutional guarantee of trial by jury. We disagree. The addition to the verdict of an amount sufficient to have the award equal ·that which was stipulated to by the parties and which was due Alaska Freight as a matter of law under the subrogation provisions of The Workmen's Compensation Act of Alaska does not review or revise the jury's verdict and hence does not conflict with the rule against additur.[15]

The judgment appealed from is affirmed.

---

13. The first paragraph of Instruction No. 22 informed the jury of the right of an employer under The Workmen's Compensation Act of Alaska, who has paid compensation to an injured employee, to be "entitled to indemnity" from a third party tortfeasor by virtue of the employer's subrogation to the rights of the employee to recover damages from such person. The second paragraph of the instruction told the jury that Alaska Freight had paid out $15,000 under the compensation act to the widow of the employee and, therefore, had the right to seek enforcement of its "right of subrogation." The jury was not informed of the effect of a "stipulation" as the term was used in this instruction, nor were the technical words "subrogation" and "indemnity" explained to them.

14. Our conclusion set forth in the opinion that no figure of liquidated damages was submitted to the jury gains further support from the last paragraph of Instruction No. 23, wherein the court stated:

> "If, on the other hand you find that Reiten and Stewart by their negligent acts * * * proximately caused the damages, then you are instructed to find in favor of Alaska Freight Lines and against Reiten and Stewart according to the damages that Alaska Freight Lines has proved to your satisfaction under the evidence."

15. See Stentor Electric Mfg. Co., Inc. v. Klaxon Co., 125 F.2d 820, 826 (3rd Cir. 1942), cert. denied, 316 U.S. 685, 62 S.Ct. 1284, 86 L.Ed. 1757 (1942).