**Ben R. BOLDEN, Appellant,**
v.
**CITY OF KODIAK, Appellee.**
**No. 844.**

Supreme Court of Alaska.
April 19, 1968.

Hugh B. White, Anchorage, for appellant.

David B. Ruskin, Kodiak, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

This litigation arises out of the seismic wave which struck the city of Kodiak on. Good Friday, March 27, 1964.

The gist of appellant's complaint against appellee city of Kodiak was that the city wrongfully destroyed two buildings which were owned by appellant.[1] More specifically, it was plead that the

---

9. Alaska State Housing Authority v. Contento, 432 P.2d 117, 123 (Alaska 1967); Stansberry v. Manson, 420 P.2d 449, 451 (Alaska 1966).

1. Appellant instituted suit against the State of Alaska, Kodiak Island Borough, and appellee. In the original complaint, it was alleged that the defendants caused

City of Kodiak and Kodiak Island Borough, either singly or collectively, demolished and destroyed or cause to be demolished and destroyed, the two buildings located upon the * * * real property, and all their contents; that the destruction was without the consent of the [appellant] and without any legal right whatsoever.[2]

After trial by jury, a unanimous verdict in appellee's favor was returned.[3] The superior court then entered judgment dismissing appellant's cause of action on its merits. It is necessary to refer in some detail to the evidence which was produced at the trial before discussing the questions presented by this appeal.

Appellant testified to the following: That he was the owner of two houses which were located in the downtown area of the city of Kodiak. As a result of the March 27, 1964, seismic wave, both of these structures were knocked off their respective foundations. In the period following the destruction caused by the seismic wave, he gave permission to Councilman Brechan to move one of the houses in order to re-establish power by running a cable into the downtown area. On April 6, 1964, appellant asked the city council for permission to move the two buildings and according to appellant's version, he received consent to do so from the city clerk, Mr. Preston. Appellant then hired a professional housemover who proceeded to prepare one of the structures for moving. At this point appellant was refused a wide-load permit from the city of Kodiak's chief of police. The city manager of the city of Kodiak then requested appellant to write to the city council.[4] In his letter to the council, appellant asked permission to move the two buildings to appellee city of Kodiak's "old Rotary Park Playground."[5] The council refused this request and according to appellant, specifically denied him the right to move the buildings anywhere. Appellant's houses were thereafter destroyed by controlled fire on April 27, 1964. In regard to this act, appellant testified that no one told him they were going to destroy and burn his buildings.

On cross-examination, appellant admitted that he had been given notice that his buildings were to be destroyed. This notice was received on April 24, 1964, in the form of a letter written by Harry E. Carter, District Sanitarian, Department of Health and Welfare, State of Alaska. After enumerating the reasons why appellant's build-

---

the Federal Bureau of Docks & Yards to destroy two residential buildings owned by appellant. All of the original defendants moved against the complaint on the grounds that it failed to state a claim upon which relief could be granted. This motion was granted and subsequent thereto, appellant's motion to amend the complaint was granted as to the Kodiak Island Borough and appellee city of Kodiak, but was denied as to the State of Alaska.

2. Appellant sought damages in the amount of $28,000 for the two houses, $2,000 for loss of rentals therefrom, and $10,000 in exemplary or punitive damages.

3. At the conclusion of appellant's case in chief, the trial court granted defendant Kodiak Island Borough's motion for directed verdict and entered an order dis-

missing appellant's cause of action against the borough.

4. The chief of police referred appellant to the city council and to the newly organized borough planning and zoning commission.

5. Appellant's testimony on cross-examination indicates that he did not ask the city council to allow the houses to be moved to an area other than the Rotary Park Playground location because he "thought it was hopeless." On redirect, appellant testified that he had asked the city council to grant him permission to move the buildings on to his own property (which was situated beyond the city limits). As to this request, appellant stated, "They didn't say yes and they didn't say no." After that, appellant said he "got a little hard boiled."

ings constituted public nuisances and health hazards, the letter stated that the Federal Bureau of Docks & Yards would be notified of "this condemnation order" and requested to "begin demolition of these houses on * * * April 27th, 1964." [6]

Appellant called two additional witnesses and then rested his case in chief.[7] Appel-

6. The full text of the letter reads as follows:

Mr. Ben Bolden
P. O. Box 991
Kodiak, Alaska

Subject: Condemnation of your buildings located on Blocks 10 and 16, U.S. Survey No. 2537B, City of Kodiak.

Dear Mr. Bolden:

By authority referred to under Title 7, Alaska Administrative Codes, Chapter 2, Subchapter 11, part 7, Section 1274, The Alaska Department of Health & Welfare hereby declares that your below described property constitutes a Public Nuisance and Health Hazard. Reasons for this declaration are as follows:

1. Dilapidation of buildings.
2. Filthy condition of buildings caused by flooding of polluted waters from the March 27, 1964 seismic tidal waves.
3. No foundations under buildings—the buildings having been by seismic tidal waves.
4. No water—the service connections having been severed.
5. No sewer—the service connections having been severed and plumbing fixtures busted.
6. Buildings in their present position serve as rat harborage areas.
7. Buildings are of very small size and of old construction materials and without adequate ventilation.
8. No electrical power and without adequate natural lighting.
9. One entrance construction constitutes a fire hazard and therefore not adequate for rental units.

In-as-much as the City of Kodiak and the Borough Planning & Zoning Commission have refused you permission to relocate these structures within the Kodiak Area, we hereby condemn the buildings and request that they be destroyed.

In-as-much as you have had 28 days since the earthquake and seismic tidal waves in which to salvage as much as possible of your personal property, we are notifying the Bureau of Docks & Yards of this condemnation order and are requesting that they begin demolition of these houses on Monday, April 27, 1964 if you have not already accomplished same by that date.

The houses in question are: 1) A small yellow house located on Block 10 and, 2) A small red house located on Block 16—both of U.S. Survey 2537B, Kodiak Alaska.

Permission is hereby granted you to salvage from these buildings any personal items, fixtures, appliances, etc. which may still remain in said buildings.

We are sorry that you must suffer these personal losses which resulted from the "Good Friday" disaster and trust that you understand the necessity of this condemnation order in order to protect the Public Health, Safety, and well being of the community of Kodiak, Alaska.

If you have any questions regarding the matter, please feel free to stop by the Health Center and discuss same with the District Sanitarian who is acting for the State of Alaska and the City of Kodiak.

Sincerely yours,
THOMAS R. MCGOWAN, M.D., Dr. P. H.
REGIONAL HEALTH OFFICER
By: /s/ Harry E. Carter
Harry E. Carter
District Sanitarian

---

7. Leslie Laird testified that he had been employed by appellant to "help him remove all * * * his material and furniture * * * and fixtures from the buildings," and that while he was so employed, and upon returning from a lunch break, he learned appellant's buildings had been burned down.

lee's first witness was Harry E. Carter, a district sanitarian of the State of Alaska. This witness testified that after the widespread destruction wrought throughout the city of Kodiak by the seismic waves, he inspected the subject buildings and informed appellant he "had been requested to make a preliminary survey of these buildings to ascertain whether or not they should or should not be condemned." Carter further testified to several subsequent meetings with appellant, during the first of which he informed appellant that his buildings were "substandard and subject to condemnation as being unfit for human habitation as they existed." In response, appellant mentioned that he would like to relocate the buildings. (Carter testified that he agreed with appellant's suggestion.) Thereafter, Carter attempted to ascertain from appellant what success, if any, appellant had achieved concerning the moving of the structures. The witness further testified that at his last meeting with appellant "prior to the issuance of this condemnation order [appellant] Mr. Bolden himself said to go ahead." Elaborating upon the foregoing, the witness stated that:

[I]n effect he said to go ahead with the condemnation; that he was leaving Kodiak. He was disgusted with the—the people in * * * Kodiak and the lack of cooperation and * * * foresight and so forth, and he was just disgusted and he was going to leave.[8]

Appellee called two additional witnesses.[9] Both parties then rested, and after argument and instructions the cause was submitted to the jury for determination. As we indicated earlier, the jury found against appellant and this appeal followed.

In his opening brief, appellant asserts a single specification of error, namely, that the superior court erred in entering judgment upon the verdict since it was contrary to the clear weight of the evidence.[10] In response thereto appellee city of Kodiak has advanced the argument that on review a jury verdict cannot be set aside on the ground that the verdict is contrary to the clear weight of the evidence in the absence of a motion for a directed verdict, or in the alternative, for a new trial.[11] Appellee re-

---

8. Carter also stated that "At the last meeting Mr. Bolden told me verbally to go head with the condemnation. I told him I would so write the condemnation and * * * give him a copy and give copies to the City of Kodiak * * * to the Corps of Engineers * * * and to the Borough office * * *."

9. Fred C. Brechan, a member of the city council and head of demolition, was called. He testified that he had not given any orders to demolish appellant's buildings and that during the two-week period preceding the date on which the buildings were destroyed he had been absent from the State of Alaska.

As to the procedure which was followed in demolition matters, this witness testified that either "the Building Inspector or the Health Department would make a recommendation to the City and that the City would then either get the approval of the property owner, or would direct the demolition squad of the Bureau of Yards and Docks to destroy a certain building."

The city clerk of the city of Kodiak testified that he did not remember any conversation with appellant and that the city never issued moving permits (this being a function of the State of Alaska).

10. The specification of error is worded in the following manner:

The Superior Court committed prejudicial error when it entered its judgment based on the verdict of the jury, which verdict was contrary to the clear weight of the evidence in that the evidence to support that verdict was completely lacking or was so slight and unconvincing as to make that verdict plainly unreasonable and unjust * * *.

11. In conjunction with this contention, appellee also argues that since appellant briefed only one specification of error all other points are considered abandoned, citing Isaacs v. Hickey, 391 P.2d 449 (Alaska 1964); Parks v. Brown, 368 P.2d 220 (Alaska 1962); DeArmond v. Alaska State Dev. Corp., 376 P.2d 717 (Alaska 1962).

In appellant's Statement of Points on Appeal, it was asserted that the superior court erred in granting judgment on the jury's verdict since it was contrary to the weight of the evidence; that the court

lics upon federal precedents holding that appellate courts will not review the sufficiency of the evidence in the absence of a motion for directed verdict.[12] In regard to this rule, Professor Moore states:

> From the beginning of the Federal Rules of Civil Procedure, the courts have been consistent in holding that the appellate court cannot review the sufficiency of the evidence in the absence of an unwaived motion for a directed verdict. Essentially, the reasons behind this position are two. The first is the general rule that an appellate court will not review issues on appeal that were not properly raised in the trial court. The second is that the function of the appellate court is to review actions of the trial court; it does not and cannot sit to review the actions of the jury itself. The latter proposition rests on a constitutional base that precludes the reconsideration of verdicts by an appellate tribunal.[13]

Review of the record shows that appellant did not make any motions for directed verdict, judgment n. o. v., or for a new trial. It is established that motions for directed verdicts or for judgments n. o. v. raise questions as to the legal sufficiency of the evidence. On the other hand, a motion for new trial on the ground that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial court.[14] In regard to the necessity of a motion for a new trial, we said in Heacock v. Town [15] that

> Here the appellant made no motion for a new trial. We might dispose of the matter * * * by saying that since the discretionary authority of the court below to grant a new trial was never invoked by the appellant, there is nothing for us to review. We have, however, reviewed the record to ascertain whether the damages awarded appellant were so grossly inadequate as to amount to a miscarriage of justice.[16]

erred in dismissing the case as to the Kodiak Island Borough; that the court erred in taking the issue of punitive damages out of the case; and that the court erred in refusing to give appellant's requested instructions numbered I, III, IV, V, and VII.

12. Dupont v. Southern Pac. Co., 366 F. 2d 193 (appeal pending) (5th Cir. 1966); Gebhardt v. Wilson Freight Forwarding Co., 348 F.2d 129 (3d Cir. 1965); Woods v. National Life & Acc. Ins. Co., 347 F.2d 760 (3d Cir. 1965); Brown v. Poland, 325 F.2d 984 (10th Cir. 1963). Compare Isaacs v. Hickey, 391 P.2d 449, 452 (Alaska 1964).

13. 5 J. Moore, Federal Practice ¶ 50.05 [1], at 2343–45 (2d ed. 1967) (footnote omitted). See also 2B W. Barron & A. Holtzoff, Federal Practice & Procedure § 1081, at 424–26 (rules ed. 1961) (footnotes omitted), where the authors state:

> It is well established that the sufficiency of the evidence is not reviewable on appeal unless a motion for a directed verdict was made in the trial court. There are sound reasons for this rule. The party who makes no motion for a directed verdict must be of the view that the evidence makes a case for the jury and should not be permitted to

> impute error to the court for sharing that view. The appellate court, therefore is powerless to review the sufficiency of the evidence to support the verdict if the appellant made no motion for a directed verdict. The only exception is where the insufficiency of the evidence constitutes plain error apparent on the face of the record which if not noticed would result in a manifest miscarriage of justice.

14. See discussion of these points in 6A J. Moore, Federal Practice ¶ 59.08 [5] (2d ed. 1966).

15. 419 P.2d 622, 624 (Alaska 1966) (footnote omitted).

16. In regard to a separate issue in Heacock v. Town, id. at 623, this court ruled that:

> The failure to object to prejudicial remarks and to move the court for a mistrial or for an admonition to the jury constitutes a waiver of the objection. This does not mean that we shall not consider plain error, even though not objected to below, which is so substantial as to result in injustice.

> Concerning "plain error" see Merrill v. Faltin, 430 P.2d 913, 917 (Alaska 1967), and Meyst v. East Fifth Ave. Serv., Inc., 401 P.2d 430, 434 (Alaska 1965).

■■ Following a technique similar to that employed in Heacock v. Town,[17] we have reviewed the record to ascertain whether the evidence was legally sufficient to support the verdict despite appellant's failure to make a motion for directed verdict or for judgment n. o. v. at the trial court level. We have further reviewed the record to ascertain whether a new trial should be granted on the ground that the verdict is contrary to the clear weight of the evidence. Again, despite appellant's failure to move for a new trial on this ground, we have undertaken to review these questions in order to ascertain whether or not there has been a miscarriage of justice.

After instructing the jury that appellant had the burden of proving appellee city of Kodiak "caused to be destroyed, the [appellant's] two houses," the trial court charged the jury that if they found for appellant on this issue they must then determine

if the City of Kodiak acted reasonably during a period of emergency to protect the public health or safety as it claims, or that the [appellant] consented to the demolition or destruction of his houses.[18]

Of particular significance to our disposition of the merits of this appeal is the full instruction which the trial court gave concerning the consent to demolition or destruction issue. In this part of its charge, the court said:

The [appellee], City of Kodiak, has offered the testimony of Harry Carter, that the [appellant], Ben Bolden, gave his consent to the demolition and destruction of his two houses. The [appellant], Ben Bolden, has testified that at no time did he give his consent to Harry Carter or anyone else for the demolition or destruction of his property.

If you believe the testimony of Harry Carter and disbelieve the testimony of Ben Bolden relating to a consent, you will find on this issue for the [appellee], City of Kodiak. But on the other hand, if you disbelieve the testimony of Harry Carter, and believe the testimony of Ben Bolden, that consent was not given, you will find for the [appellant] on this issue.[19]

Appellee argues that the jury could have found appellant consented to the demolition of his buildings. Appellee further contends that since there was an evidentiary basis for the jury's finding that appellant consented to the destruction of his houses, the verdict and judgment below should be affirmed.

■■ Viewing the evidence and the reasonable inferences therefrom in the light most favorable to appellee, we conclude that the evidence was legally sufficient on the issue of appellant's consent to justify

---

17. 419 P.2d 622 (Alaska 1966).

18. The court informed the jury that the city has "the burden of proving either of these defenses."

19. Appellant's trial counsel made no objection to the court's instructions pertaining to the question of consent nor did appellant object to any other portion of the court's charge. The only objections made were to the failure of the court to give appellant's requested instructions and in particular, the court's failure to permit the issue of punitive damages to go to the jury and "to more clearly * * * instruct the jury concerning the meaning of fair market value." In Gregory v. Padilla, 379 P.2d 951, 955 (Alaska 1963), we held that in the absence of proper objection we will not review an instruction unless it appears that a miscarriage of justice may occur. To the same effect, see Merrill v. Faltin, 430 P.2d 913, 917 (Alaska 1967); Meyst v. East Fifth Ave. Serv., Inc., 401 P.2d 430, 434 (Alaska 1965); Buza v. Columbia Lumber Co., 395 P.2d 511, 512 (Alaska 1964); Saxton v. Harris, 395 P.2d 71, 73 (Alaska 1964); Mitchell v. Knight, 394 P.2d 892, 897 (Alaska 1964); Higgins v. Lantz, 394 P.2d 776, 777 (Alaska 1964); Reiten v. Hendricks, 370 P.2d 166, 169 (Alaska 1962). Compare Pepsi Cola Bottling Co. of Anchorage v. Superior Burner Serv. Co., 427 P.2d 833, 837 (Alaska 1967).

the jury's verdict.[20] In our view there was room for diversity of opinion among reasonable men, in the exercise of reasonable judgment concerning the question of whether appellant consented to the demolition of his properties.[21] Resolution of the conflicts in testimony between appellant and Harry Carter was for the jury.[22] Not only are we of the opinion that there was adequate evidence of consent, but we are of the further view that the jury's verdict was not against the clear weight of the evidence.

The judgment entered below is affirmed.[23]

20. In Otis Elevator Co. v. McLaney, 406 P. 2d 7, 9 (Alaska 1965) (footnote omitted), we said:

> In determining whether error was committed in relation to these motions [for directed verdict and judgment notwithstanding verdict], this court views the evidence in its strongest light in favor of the party against whom the motions were made.

Our disposition of the issue of appellee's defense of consent makes unnecessary resolution of two alternative bases suggested by appellee for upholding the verdict. Appellee argues that the jury could have found that appellee neither destroyed the houses nor directed their destruction, or that the houses were destroyed during a period of emergency to protect the public health and safety.

21. City of Fairbanks v. Nesbett, 432 P.2d 607, 609–610 (Alaska 1967); Merrill v. Faltin, 430 P.2d 913, 916 (Alaska 1967); Groseth v. Ness, 421 P.2d 624, 629 (Alaska 1966); National Bank of Alaska v. McHugh, 416 P.2d 239, 242 (Alaska 1966); Mallonee v. Finch, 413 P.2d 159, 161 (Alaska 1966); Crawford v. Rogers, 406 P.2d 189, 194 (Alaska 1965); Otis Elevator Co. v. McLaney, 406 P.2d 7, 10 (Alaska 1965); Saxton v. Harris, 395 P.2d 71, 73 (Alaska 1964); Snipes v. March, 378 P.2d 827, 828 (Alaska 1963).

22. In his reply brief, appellant contends that the court's consent instruction was erroneous in that it failed to distinguish between "condemnation" and "destruction." Appellant contends that even in its most favorable light the evidence only shows that he consented to condemnation of his property but not to its destruction or demolition. As we noted previously, no objection was made to the court's instruction and, therefore, appellant is precluded from raising the point at this juncture of the litigation. See authorities cited in note 19, supra. Further, we are of the opinion that the meaning of the term "condemnation," as used by the state sanitarian, and understood by appellant, clearly encompassed the destruction or demolition of appellant's properties.

23. In his reply brief appellant, for the first time in the appeal, attempts to raise issues other than the sufficiency of the evidence. Nevertheless, we have reviewed the record in light of these assertions in order to ascertain the existence of clear or manifest error on the trial court's part. We have found no such error.