*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ELIZABETH HEYNEN, | ) | |
| | ) | Supreme Court No. S-13834 |
| Appellant, | ) | |
| | ) | Superior Court No. 1JU-07-00710 CI |
| v. | ) | |
| | ) | O P I N I O N |
| JULENE FAIRBANKS, | ) | |
| | ) | No. 6748 - February 1, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Philip M. Pallenberg, Judge.

Appearances: Caitlin Shortell, Shortell Gardner LLC, Anchorage, and Mark C. Choate, Choate Law Firm, Juneau, for Appellant. Paul W. Waggoner, Law Offices of Paul W. Waggoner, Anchorage, for Appellee.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices. [Christen, Justice, not participating.]

CARPENETI, Chief Justice.

## I. INTRODUCTION

A tenant fell on the outside stairs of her rented apartment and sustained a serious back injury. When she fell, one of the wooden stairs broke. She sued her landlord, from whom she subleased the apartment, alleging that her fall was caused by the landlord's negligent failure to inspect and maintain the staircase.

Before trial, the tenant filed a series of motions in limine, including one seeking to prevent the admission of evidence not previously disclosed during discovery on the issues of comparative negligence and failure to inspect and maintain, and another seeking to prevent the defendants from misstating the respective duties of landlords and tenants. The superior court denied these motions. At the close of evidence, the tenant moved for a directed verdict on the landlord's comparative negligence defense and the landlord's attempt to allocate fault to a deceased party. She also moved to preclude the landlord from making arguments based on medical records admitted at trial. The superior court denied each motion. The jury returned a verdict finding no negligence.

The tenant appeals the denial of her motions in limine and for directed verdict, as well as the superior court's denial of her motion to preclude opposing counsel from arguing from certain medical records. She also argues that the superior court erred in allowing the landlord to attempt to allocate fault to a deceased party. Finally, she argues that the jury's finding that the landlord was not negligent was contrary to the evidence.

Because the superior court did not err, because the jury's verdict was not contrary to the evidence, and because the medical records issue is moot, we uphold the jury's verdict and affirm the superior court's rulings.

## II. FACTS AND PROCEEDINGS

### A. Facts And Pretrial Proceedings

On October 21, 2006, Elizabeth Heynen (Heynen) fell on the exterior stairs of her second-floor rented apartment in Skagway. The apartment building was constructed by its owner, Leslie Fairbanks (Leslie), in 1990-91. In April 2006, Leslie leased the building to his daughter, Julene Fairbanks (Julene). Julene operated a specialty food store on the ground floor, where Heynen was an employee. Julene also rented the upstairs apartment to Heynen.

In June 2007, Heynen filed a complaint for personal injury. She alleged that she fell when she "exited her . . . apartment, intending to descend the outside stairway to take her dog for a walk" and "the edge of the first step below the upper landing crumbled underfoot causing her to fall down backwards, landing on her buttocks and severely striking her lower spine on the edge of the landing." The complaint detailed Heynen's medical problems following the fall, which she claimed caused immediate pain and permanent injuries and required her to have spinal surgery. Heynen further alleged that both Leslie and Julene had breached their duties as landlords to inspect, maintain, and repair the staircase and that their negligence had been a substantial factor in causing her injuries. Heynen sought general and special damages as well as fees and costs.

Leslie and Julene each answered the complaint. They denied Heynen's allegations and presented a number of affirmative defenses, including third-party negligence, failure to mitigate, and comparative negligence. Heynen filed an amended complaint on October 12, 2007, in which she argued that the defendants' failure to maintain the premises as required by AS 34.03.100[1] constituted negligence per se. Heynen also filed a motion to establish, as "the law of the case," that Leslie and Julene had a "duty to inspect, maintain and remedy dangerous conditions on the premises." Leslie filed a motion for summary judgment on Heynen's negligence per se claim. In January 2008, Superior Court Judge Philip M. Pallenberg issued an order granting both parties' motions, though he made "no determination about whether Defendants' statutory duties extended to the staircase at issue in this litigation," which he noted would depend on whether or not the staircase was considered part of the rental premises or a "common area."

---

[1]     AS 34.03.100 imposes a duty on landlords to "maintain fit premises."

During discovery, Heynen filed a request for admissions in which she asked Leslie and Julene to "admit there are no genuine issues of fact to support your third Affirmative Defense that Plaintiff Elizabeth Heynen's 'injuries, if any[,] were caused by and/or contributed [to] by her own negligence.' " Leslie and Julene declined to make this admission, stating that there were "genuine issues of fact as to how the accident occurred," that discovery was ongoing, and that the defendants "anticipate[d] being able to further respond to this request after plaintiff's discovery deposition." Heynen subsequently filed a request for supplementation from Julene, asking her to "provide any information which she intend[ed] to present at trial" regarding the affirmative defenses. Julene did not respond to this request. Heynen did not file a motion to compel.

In October 2008, Heynen filed a motion for partial summary judgment on Leslie's and Julene's affirmative defenses of comparative negligence and failure to mitigate. The superior court denied the motion as to comparative negligence. The court noted that Heynen's motion for summary judgment relied on the argument that the defendants had not disclosed facts supporting their affirmative defenses, and that although this failure to disclose could merit discovery sanctions, it did not provide a basis for granting summary judgment.

In March 2009, Heynen filed a motion for discovery sanctions based on Leslie's and Julene's "failure to provide a factual basis [for,] or to respond to[,] repeated discovery requests as to their affirmative defense of comparative negligence." As a sanction for these alleged discovery violations, Heynen requested that the superior court preclude Leslie and Julene from asserting the comparative negligence defense at trial. The superior court denied this motion, explaining that "sanctions . . . only come into play if there is an order compelling discovery which is violated" and noting that Heynen did not "point to any fact, or any document, that defendants have not produced." But the court invited Heynen to move to compel disclosures if she felt that "defendant's

disclosures [were] inadequate," and noted that if "defendants attempt to introduce evidence at trial which was not [previously] disclosed, [Heynen] may object under Rule 37(c)(1)."[2]

Before trial, Heynen filed a series of motions in limine. Motion in limine No. 2, filed in September 2009, requested a court order prohibiting the defendants from raising any new factual defenses to Heynen's claim that her fall was caused by the defendants' failure to inspect, repair, and maintain the stairway. Motion in limine No. 4 requested an order prohibiting the defendants from presenting any facts not previously disclosed in support of their comparative negligence defense.

On November 5, 2009, the superior court issued an order on Heynen's motions in limine Nos. 2 through 6. The court granted three of Heynen's motions, but denied motions No. 2 and No. 4.

Heynen also filed motion in limine No. 8, which requested an order prohibiting defendants' counsel from "miscommunicating the differing duties at issue" — specifically, the duties of landlords under the Uniform Residential Landlord and Tenant Act and the lesser duty of care imposed on tenants. The superior court denied the motion in an order that stated: "The parties are free to make arguments that note the similarities and the differences between their respective duties, as long as they do not

---

[2]   Alaska Civil Rule 37(c)(1) provides, in relevant part:

> A party that without substantial justification fails to disclose information required by Rules 26(a), 26(e)(1), or 26.1(b) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. . . .

misstate the law." The court also noted that the parties' "duties are different, and counsel should not argue that they are the same."

## B.    Trial And Decision

A jury trial was held in November 2009, with Julene as the sole defendant.[3] The jury heard testimony from a number of witnesses, including a construction expert, Julene, three of Heynen's children, a biomechanics expert, an economist, an orthopedic surgeon, and Heynen. Julene also introduced the deposition testimony of Kurt Kosters, the contractor who built the staircase. Kosters' testimony was introduced by deposition because he died before trial. Prior to the admission of Kosters' testimony, Heynen moved for a directed verdict on Kosters' liability for Heynen's injuries, arguing that there was "no way a reasonable juror could conclude . . . that Mr. Kosters was negligent." The superior court denied the motion but told Heynen's attorney he could "renew [it] in the form of a judgment notwithstanding the verdict." After Kosters' testimony was introduced, Heynen's attorney renewed the motion as a motion for a directed verdict and the court again denied it. Heynen's attorney also moved for a directed verdict on the comparative negligence defense; he argued that "there's been no evidence . . . that Ms. Heynen was . . . negligent in her descent of the staircase" and "the jury shouldn't be asked to guess what might have happened." The superior court denied this motion as well.

---

[3]    Immediately before the beginning of trial, Heynen reached a settlement with Leslie, which "resolve[d] in full all claims against him . . . ." But at the conclusion of the trial, when counsel met with the court to discuss the special verdict form and jury instructions, Heynen's attorney stated that Leslie was a defendant and had not been dismissed, arguing that "you can settle and not be dismissed." The superior court allowed Leslie to be included as a defendant on the verdict form submitted to the jury. The jury found Leslie not liable. Leslie is not a party to this appeal, and neither Heynen nor Julene argues that he should be.

The jury found no negligence as to any of the parties listed on the special verdict form: Julene and Leslie Fairbanks, Kosters, and Heynen. Heynen did not file a motion for judgment notwithstanding the verdict. On March 17, 2010, the superior court entered a final judgment in favor of Julene and awarded her approximately $7,700 in Civil Rule 79 costs and approximately $9,770 in Civil Rule 82 attorney's fees. Heynen appeals.

## III. STANDARD OF REVIEW

When considering a claim that evidence offered at trial was insufficient to support a jury verdict, we review the record to determine whether "the verdict is contrary to the clear weight of the evidence."[4] "In so doing, we are required to take the evidence and all inferences reasonably deducible [from the evidence] in the light most favorable to the appellee."[5] The goal of this inquiry is to ascertain whether "there has been a miscarriage of justice."[6]

Our "role in reviewing a grant of a motion for a directed verdict or JNOV is not to weigh conflicting evidence or judge the credibility of witnesses, but rather to determine whether [the] evidence, when viewed in light most favorable to the non-moving party, is such that reasonable persons could not differ in their judgment."[7] We have held that "[t]he test is objective; and, if there is room for diversity of opinion among reasonable people, the question is one for the jury."[8]

---

[4]     *Bolden v. City of Kodiak*, 439 P.2d 796, 801 (Alaska 1968).

[5]     *Jakoski v. Holland*, 520 P.2d 569, 575 (Alaska 1974).

[6]     *Bolden*, 439 P.2d at 801.

[7]     *Korean Air Lines Co. v. State*, 779 P.2d 333, 338 (Alaska 1989).

[8]     *Dura Corp. v. Harned*, 703 P.2d 396, 402 (Alaska 1985) (citing *City of*
                                                                    (continued...)

We review a trial court's rulings on a motion in limine according to the underlying relief sought in the motion. Here, the types of relief sought in the motions in limine — preclusion of evidence and a ruling on trial management — call for abuse of discretion review.[9]

## IV. DISCUSSION

### A. The Jury's Verdict Was Not Contrary To The Evidence.

Heynen argues that the evidence of Julene's negligence "was so strong that reasonable persons could not differ in judgment," and requests that the final judgment be vacated. Julene responds that Heynen "failed to make a motion for a directed verdict or any post-trial motion" on the issue of Julene's negligence and is therefore precluded from arguing that the verdict should be set aside on appeal. In the alternative, Julene argues that the question of negligence was properly submitted to the jury and that the finding was supported by the evidence.

#### 1. Heynen has not waived the right to appeal the jury's verdict.

Heynen contends that the jury's verdict was contrary to the evidence. Heynen did not move for a directed verdict at trial on the issue of Julene's negligence,

---

[8] (...continued)
*Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216, 220 (Alaska 1978)); *see also Cameron v. Chang-Craft*, 251 P.3d 1008, 1017-18 (Alaska 2011) (noting that "[b]ecause conflicting evidence is not to be weighed and witness credibility is not to be judged on appeal, generally the only evidence that should be considered is the evidence favorable to the non-moving party — if that evidence is insufficient to allow a reasonable juror to find for the non-moving party, the trial court should grant a directed verdict or JNOV motion.") (internal citations omitted).

[9] *See State v. Doyle*, 735 P.2d 733, 739-40 (Alaska 1987) (reviewing denial of motion in limine seeking to limit evidence to that previously disclosed in discovery for abuse of discretion); *Booth v. State*, 251 P.3d 369, 372-73 (Alaska App. 2011) (applying abuse of discretion standard where law "does not specify a particular 'right' answer or response to the situation").

nor did she move for judgment notwithstanding the verdict. Julene argues that "to challenge a verdict as being inconsistent, a party must raise the issue before the jury is discharged," and claims that Heynen is precluded from raising this argument on appeal. Julene relies on *Roderer v. Dash*[10] to assert that Heynen is precluded from arguing that the jury's verdict was contrary to the evidence. It is true that in *Roderer* we declined to review the superior court's denial of judgment notwithstanding the verdict because the appellant had not previously raised the same issue in a motion for a directed verdict.[11] But *Roderer* is distinguishable from the instant case: Here, Heynen did not seek a judgment notwithstanding the verdict, nor did she move for a directed verdict. This case is governed by those cases in which we reviewed the sufficiency of evidence underlying a verdict absent a motion for directed verdict and a motion for judgment notwithstanding the verdict. In *Bolden v. City of Kodiak*,[12] for example, we reviewed the record "to ascertain whether the evidence was [l]egally sufficient to support the verdict despite appellant's failure to make a motion for directed verdict or for judgement n.o.v."[13] At oral argument, Julene conceded that *Bolden* applies; she did not ask that we reconsider or overrule it.

### 2. The jury's verdict was not contrary to the evidence.

We have stated that questions of negligence should generally be resolved by the jury rather than foreclosed by the trial court through summary judgment or other

---

[10]    233 P.3d 1101, 1106 (Alaska 2010).

[11]    *Id.* at 1108.

[12]    439 P.2d 796 (Alaska 1968).

[13]    *Id.* at 801. *See also Jakoski v. Holland*, 520 P.2d 569, 575 (Alaska 1974) (reviewing the record "to ascertain whether the evidence was legally sufficient to support the verdict").

means.[14]  "If reasonable minds could draw different inferences . . . from the facts the issue must be reserved for trial."[15]  In considering the sufficiency of evidence supporting a jury verdict on appeal, we inquire whether "the verdict is contrary to the clear weight of the evidence" to determine if "a miscarriage of justice" has occurred.[16]  In this inquiry, we draw all reasonable inferences "in the light most favorable to the appellee."[17]

Heynen argues that the evidence presented at trial "was such that reasonable persons could not differ in their judgment."  Heynen claims "uncontroverted evidence" established that Julene breached her duty to "inspect, maintain, and repair" the stairs; and that Julene's breach caused Heynen's injuries.  Specifically, Heynen points to evidence that Julene did not actively inspect, repair, or maintain the staircase, and cites expert testimony indicating that the step broke as a result of moisture and rot.  Heynen further argues that a connection between her fall, her injuries, and her resulting disabilities was conclusively established at trial.  Julene disputes each of these points.

First, while admitting that she had not physically tested the wood in the stairs to see whether it was punky or would give way under a knife, Julene noted that she "ha[d] been up and down the staircase" and the staircase "fe[lt] solid."

Second, as to the condition of the steps, Julene adduced evidence disputing Heynen's claim that the break was due to negligence on Julene's part.  The steps at issue

---

[14]  *See, e.g.*, *Maddox v. River & Sea Marine, Inc.*, 925 P.2d 1033, 1035-36 (Alaska 1996) (attributing this rule to the "elusive nature of the concept of negligence, the determination of the existence of which requires the forming of a judgment as to the reasonableness of the conduct of the parties in light of all the circumstances of the case") (quoting *Webb v. City & Borough of Sitka*, 561 P.2d 731, 735 (Alaska 1977)).

[15]  *Id.*

[16]  *Bolden,* 439 P.2d at 801.

[17]  *Jakoski*, 520 P.2d at 575.

were constructed of untreated wood and were exposed to the elements (i.e., uncovered). Heynen's expert, Marquam George, testified that the step likely broke due to the wood's moisture content and the placement of a knot in the pattern of the wood. George performed a moisture reading on a sample of wood from the stair that broke, and he testified that it was in "the danger zone." He explained that the danger zone "begins at 28 percent moisture content" and that decay starts at this point. Julene's attorney cross-examined George on the relevance of the moisture reading, since the tread was stored outside (in the rain) after it was removed from the staircase; George's response conceded that it was possible that the moisture reading was affected by this storage method.[18] George also testified that the step had "failed along a natural defect within that board, being the knot." When asked why the wood fractured, he responded:

> Well, it appeared to me a large part of that fracture could be because there was a large knot right on the leading edge of the stair. When we look at knots in wood, that's a very unpredictable element within a piece of wood, that you really don't know how it's going to be affected . . . .

George also testified that wood that is exposed to the elements has a useful service life in Southeast Alaska of between 10 and 20 years.[19] The step in question had been installed 14 years earlier.

Julene disputed that the step was rotten, and offered testimony in support of this position. Kenneth Graham, Julene's partner, removed the broken step the day of

---

[18] George was equivocal: When asked whether it made a difference that wood was stored outside on the ground, in the rain, before the moisture reading was taken, he responded, "Perhaps, but perhaps not."

[19] At another point, George stated that untreated wood has a service life of 10 to 30 years, depending on its location in the United States.

the accident.[20]  He testified that the step was difficult to remove because it was "really solid wood," not soft at all.[21]  The jury asked additional questions of Graham.  In response to these questions, Graham denied that the step was rotten:  "[N]o. . . when I took the step out there weren't any rotten sections that I had to remove."  He further testified that there might have been some discoloration, but that the step "wasn't waterlogged."

In light of all of this evidence, the jury could have concluded that a visual inspection of wooden stairs that "fe[lt] solid" was reasonable under the circumstances.  The jury may have subscribed to the argument that Julene made at closing, and concluded that the flaw in the wood was a latent, natural flaw — not caused by rot — and therefore difficult or impossible to discover under the circumstances.  Julene's counsel made this argument at closing:

> Professor George . . . testified that the — the tread broke at the — at the knot, the natural grain.  He did not say that had anyone pushed or tested or put a key in it or screwdriver or tested it, it would have shown, before this fall, that it should have been replaced.
>     . . . .
> [George] personally examined it.  He did not testify that it was soft, that it was punky, that it was rotten.  No, not at all.

In other words, even if Julene had been the most vigilant of landlords, if the step broke along a knot in the wood (which was characterized by Heynen's construction expert as a "very unpredictable element" of wood), this is not the type of harm that she could

---

[20]    Graham replaced two steps that day, since one other step appeared to have a crack in it.

[21]    Graham was unable to remove the step with a nail-puller and a 22-ounce framing hammer, and instead had to use a two-pound sledge hammer and a crowbar.

reasonably have been expected to find. Under this view, reasonable jurors could have differed over whether Julene was negligent. Under these circumstances, we conclude that the jury's verdict was not contrary to the evidence.

**B.**     **The Superior Court Did Not Abuse Its Discretion In Resolving Heynen's Motions In Limine.**

Heynen argues that the superior court erred in denying her motions in limine No. 2 and No. 4, concerning the completeness of discovery, and No. 8, concerning the appropriateness of legal arguments to be made to the jury.

**1.**     **The superior court did not abuse its discretion in denying motions in limine No. 2 and No. 4.**

In motion in limine No. 2, Heynen requested an order precluding Julene "from raising any factual defenses not previously disclosed to Plaintiff's claim that her fall was caused by Defendants' failure to inspect, repair and maintain the subject stairway." In motion in limine No. 4, Heynen similarly requested an order precluding Julene from raising "new facts in support" of her comparative negligence defense for the first time at trial. In denying the two motions, the superior court wrote:

> The court expects parties to comply with the court rules, including the rules requiring discovery and disclosure. [Heynen] has not made a showing that [Julene] failed to do so. The court will not grant motions premised upon the assumption that there has been a violation without a specific showing. . . . If the evidence at trial does not support any defense, [Heynen] may move for a directed verdict on that issue.

The superior court did not abuse its discretion in declining to issue an order precluding Julene from presenting undefined evidence at trial; nor does Heynen point to any evidence that was introduced without having been properly disclosed in advance. As the court noted, Heynen's motions in limine No. 2 and No. 4 argued that Julene made inadequate disclosure during the discovery phase of the case. Heynen also alleged

inadequate disclosure in a request for supplementation and in a motion for discovery sanctions.[22]  But Heynen never moved to compel Julene to produce specific evidence, nor did she ever object that Julene introduced previously undisclosed evidence at trial. To support her comparative negligence theory, Julene relied on testimony elicited from Heynen on cross-examination.  The superior court's denial of motions in limine No. 2 and No. 4 was consistent with Alaska law and did not constitute an abuse of discretion.

        **2.**        **The superior court did not abuse its discretion in resolving motion in limine No. 8.**

In motion in limine No. 8, Heynen requested that the superior court "issue an Order prohibiting counsel for [Julene] from miscommunicating the differing duties at issue in this matter."  Heynen argued that Julene planned to conflate her affirmative duty of care as a landlord with Heynen's duty of ordinary care as a tenant, and that "to allow such arguments [would] unduly prejudice the Plaintiff and confuse the jury." Ruling on this motion, the superior court wrote:  "The parties are free to make arguments that note the similarities and differences between their respective duties, as long as they do not misstate the law.  Their duties are different, and counsel should not argue that they are the same."

Heynen argues that this order "invited [Julene] to confuse the distinction between the duty of a landlord as opposed to a tenant"; but she does not identify any objection to such an argument at trial.[23]  Further, nothing in the superior court's order

---

[22]      Heynen's motion for discovery sanctions was essentially the same motion as her motions in limine; as sanctions, she sought an order precluding Julene from raising the comparative negligence defense at trial.

[23]      In his closing argument, Julene's attorney may have confused the duties of care; he argued that "Ms. Julene Fairbanks was also a residential tenant of her father." But the court did not allow this argument, admonishing counsel that it was "not

(continued...)

"invited" Julene's counsel to confuse the two duties. The superior court did permit the parties to discuss and compare the legal standards governing the duties of care owed by landlords and tenants, but such discussions of the law are an important component of an advocate's presentation of a case to the jury; indeed, Heynen's counsel discussed landlord duty in depth during his closing argument. The superior court's order expressly prohibited the parties from misstating the law or arguing that Heynen's and Julene's duties were the same.[24] We discern no abuse of discretion in this ruling.

C.    **The Superior Court Did Not Err In Denying Heynen's Motion For Directed Verdict On The Issue Of Her Comparative Negligence.**

Heynen contends that "there was no evidence presented to create a question for the jury on whether [she] was comparatively negligent" and that the superior court erred in allowing this theory to be considered by the jury. We note first that the jury found no negligence on Heynen's part; accordingly, any error would have been harmless because Heynen was not prejudiced by the superior court's action.

But because Heynen argues that the mere giving of a comparative negligence instruction was confusing to the jury, we also address this issue on the merits. We conclude that the superior court did not err in its instructions on this matter. After the close of evidence, Heynen moved for a directed verdict on the issue of her comparative negligence. The superior court denied this motion ruling that the jury could draw "[a] reasonable inference . . . that a substantial factor in [Heynen's] fall was the fact that she stepped so close to the edge of the step." The jury found that Heynen was not

_____

[23]    (...continued)
accurate."

[24]    Thus, it is not clear to us that the superior court denied Heynen's motion at all. Heynen essentially sought the order provided by the court: the preclusion of misleading conflation of the different duties of care at issue.

comparatively negligent, but it also found that the other parties listed on the verdict form were not negligent. On appeal, Heynen challenges the superior court's denial of her motion for a directed verdict, arguing that the comparative negligence defense "confused the jury so that the resulting verdict was contrary to the evidence presented."[25]

We will not reverse a superior court's denial of a motion for directed verdict unless the "evidence . . . is such that reasonable persons could not differ in their judgment."[26] In rejecting Heynen's argument that the jury's verdict was contrary to the evidence, we determined that reasonable jurors could have found Heynen's own actions contributed to or caused her fall. The evidence supporting the jury's verdict — specifically, evidence that Heynen was holding her dog's leash with her dominant hand, that she does not remember looking at the stairs, and that she may have stepped very close to the leading edge of the step — created a question of fact for the jury concerning whether Heynen was comparatively negligent. When viewed in the light most favorable to the nonmoving party,[27] the evidence was such that a reasonable juror could have found that Heynen was comparatively negligent.

We are not persuaded by Heynen's argument that the jury was somehow confused by the existence of Julene's comparative negligence defense. We trust jurors to consider properly presented claims and defenses within the contours of jury instructions. Heynen's argument seems to imply that because the jury did not find

---

[25] Heynen frames the issue on appeal as: "Whether the Superior Court erred in allowing [Julene] to argue to the jury that [Heynen] was comparatively negligent." Heynen argues that the question of comparative negligence should not have been submitted to the jury, which is essentially an appeal of the superior court's denial of her motion for a directed verdict.

[26] *Korean Air Lines Co. v. State*, 779 P.2d 333, 338 (Alaska 1989).

[27] *Id.*

negligence on the part of any of the parties, it must have been confused. But the existence of negligence is not a necessary precondition to the occurrence of a personal injury. The superior court did not err by denying Heynen's motion for directed verdict on the issue of comparative negligence.

**D.     The Superior Court Did Not Err In Denying Heynen's Motion For Directed Verdict On Kosters' Liability**.

Heynen argues that the inclusion of Kurt Kosters on the special verdict form as an individual to whom fault could be allocated "was improper and confusing because Mr. Kosters was an employee and agent of Mr. Fairbanks and thus any allocation of fault was imputable to Mr. Fairbanks, who was dismissed from the action by stipulation of the parties." She also contends that "the allocation of fault to Mr. Kosters was meritless as Mr. Kosters was deceased at the time of trial and had no estate." As with the previous issue concerning Heynen's argument on comparative negligence, the jury found no negligence on the part of Kurt Kosters. Again, we conclude that any error would therefore be harmless. But because Heynen argues that the giving of this instruction confused the jury, we consider the matter on the merits. We conclude that the superior court did not err in instructing the jury.

Heynen moved for a directed verdict on this issue at trial, claiming that there was "no way a reasonable juror could conclude . . . that Mr. Kosters was negligent." Heynen also argued that it was improper to allocate fault to an employee who merely "did what was on the plans."

The superior court denied the motion for directed verdict, ruling:

I will allow this to go to the jury . . . . It's not an extraordinarily technical subject. There is some testimony about the way the treated and untreated wood hold up in the environment . . . from Mr. George. There's testimony about Mr. Kosters, as to the consequences of that choice. . . . And

so I will allow the jury to allocate fault on that issue at this point.

The superior court also rejected Heynen's argument that allowing the jury to consider allocating fault to Kosters was improper because it "allocated fault in another direction to [Leslie Fairbanks]," who was no longer a party. The court noted that "the legal issue under the doctrine of respondeat superior . . . is an entirely different question," and concluded that "[e]mployees don't have immunity from liability." At the close of evidence, Heynen renewed the motion for directed verdict; the court again denied it. The jury found that Kosters was not negligent.

It was not error to deny the motion for directed verdict because reasonable jurors could have concluded that Kosters was, or was not, negligent. The jury heard testimony suggesting that Kosters may have been negligent in failing to use treated wood on the exterior stairs where Heynen fell. Kosters testified, in a deposition transcript read to the jury, that he decided what type of wood would be used to build the stairs and that there was never any discussion about possibly waterproofing the wood.[28] One of Heynen's experts testified that the stairs were constructed using untreated wood, and that the use of treated wood would have better protected the stairs from the elements. Kenneth Graham (Julene's domestic partner) also testified that untreated wood may rot and fail if exposed to the elements. On the basis of this evidence reasonable jurors could have found that Kosters bore some responsibility for the condition of the stairs. Alternatively, reasonable jurors could have concluded, as Heynen argued, that Kosters was not negligent. The superior court did not err in denying Heynen's motion for a directed verdict on the issue.

_____

[28] Kosters gave conflicting testimony about his level of responsibility for making substantive decisions about the construction of the stairs, but he unambiguously indicated that he chose what type of wood to use.

Heynen's other arguments challenging the propriety of allowing the jury to consider allocating fault to Kosters are unpersuasive. As the superior court properly noted, there was no reason that Leslie's role in the trial and his relationship to Kosters should have prevented the jury from considering whether Kosters negligently caused the accident. Though Heynen reached a settlement with Leslie, fault could still be allocated or imputed to Leslie under AS 09.17.080 [29] as a party to the suit.[30] We see no merit to the argument that Heynen was prejudiced by the inclusion of Kosters on the special verdict form. No fault was allocated to Kosters — which was the result Heynen advocated for — and there is no indication that including his name on the special verdict form confused the jurors. The superior court did not err in denying the motion for directed verdict that sought a ruling that Kosters was not negligent.

---

[29] "In all actions involving fault of more than one person, including third-party defendants *and persons who have settled or otherwise been released*, the court . . . shall instruct the jury to answer special interrogatories . . . indicating . . . the percentage of the total fault that is allocated to each [person]." AS 09.17.080(a)(2) (emphasis added).

[30] Additionally, an allocation of fault to Kosters would not necessarily be imputed to Leslie; the court never ruled that Kosters was Leslie's employee. Kosters could have been an independent contractor, in which case the doctrine of respondeat superior would not have applied. *See, e.g.*, *Parker Drilling Co. v. O'Neill*, 674 P.2d 770, 775 (Alaska 1983) (noting that employers are ordinarily not liable for the torts of independent contractors).

It is also irrelevant that Kosters was deceased and had no estate. Kosters' estate was not exempt from liability, and there is no rule stating that judgment-proof individuals cannot be tort defendants.

**E. Heynen's Argument Concerning Admission Of Her Medical Records Is Moot.**

Heynen argues that the superior court abused its discretion in admitting her medical records from the 1980s and 1990s, when she was involved in multiple car accidents. This evidence might have been relevant in the jury's assessment of causation or damages had it found that Julene was negligent. Because it returned a verdict of no negligence, however, this point is moot. We therefore decline to reach it.

**V.  CONCLUSION**

We AFFIRM the decisions of the superior court.