**UNITED BONDING INSURANCE COMPA-
NY; Stewart & Fritz, Inc.; and Charles
A. Stewart and Anita Stewart, Appellants,**

v.

**Walter G. CASTLE, d/b/a Castle Company,
Appellee.**

**No. 876.**

Supreme Court of Alaska.

Aug. 22, 1968.

H. Russel Holland, of Stevens & Holland, Anchorage, for appellants Stewart & Fritz and Charles and Anita Stewart.

Richard O. Gantz and Robert C. Erwin, of Hughes, Thorsness & Lowe, Anchorage, for appellant United Bonding Ins. Co.

Kenneth McCaskey, of Robison, McCaskey & Strachan, Anchorage, for appellee.

## OPINION

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

The state contracted with appellant, Stewart & Fritz, Inc., for placing fill for a parkway apron at the Homer airport. Stewart & Fritz made an agreement with appellee, Castle Company, to furnish trucks and a loader for the job. The parties disagreed over the amount due Castle, and the latter brought this suit for recovery of monies due under the agreement.

Suit was filed by Castle against appellant, United Bonding Insurance Company, the surety of the payment bond of Stewart & Fritz. United Bonding then filed a third party complaint against Stewart & Fritz which was dismissed when the latter intervened as a defendant in the action. The jury returned a verdict in favor of Castle, and both Stewart & Fritz and United Bonding have appealed.

*Stewart & Fritz Appeal*

Fill was to be hauled by Castle with its trucks from two places, one located about one mile from the job site, referred to as the short haul, and the other, somewhat less than three miles from the job site, referred to as the long haul. There was no dispute as to the number of truck loads hauled to the job site, there being 3,208 short hauls and 2,288 long hauls. The dispute arose over the amount Castle was to be paid for hauling the fill. Stewart & Fritz's version of the agreement was that Castle was to be paid 50 cents a yard on the short haul and 90 cents a yard on the long haul, with quantities to be measured after the fill was in place and compacted. On the other hand, Castle's version of the agree-

ment was that he was to be paid $5.00 a load for the short haul and $9.00 a load for the long haul, with quantities to be measured as they were placed in the trucks prior to compaction at the fill site.

According to Stewart & Fritz's version of the agreement, the total amount due Castle for gravel hauling was $19,829.00. According to Castle's version of the agreement, the total amount due would have been $36,632.00. The jury's verdict reflected that the total recovery attributable to gravel hauling was $32,969.00. This latter figure could be arrived at, Stewart & Fritz contend, only by the jury rejecting both Stewart & Fritz's and Castle's versions of the agreement, and by computing Castle's recovery on the basis of 9 uncompacted yards per truckload, at the price of 50 cents a yard for the short haul and 90 cents a yard for the long haul.[1] Stewart & Fritz argue that since the jury rejected the two theories of the agreement that had been presented by the parties, it was pure speculation on the jury's part and the remaking of the contract to compute Castle's recovery on the basis that the jury appears to have used. In short, the point made by Stewart & Fritz on this appeal is that the verdict and judgment should be set aside because the verdict was contrary to the weight of the evidence.

To hold that the verdict was contrary to the weight of the evidence is equivalent to saying that under the evidence the jury could not reasonably have decided as they did.[2] To reach such a conclusion it would have to appear that evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust.[3]

We cannot reach that conclusion. Castle testified that there was to be paid $5.00 a load for the short haul and $9.00

---

1. At 50 cents a yard for 3,208 short hauls and 90 cents a yard for 2,288 long hauls, using 9 uncompacted yards for each truck load, Castle would have earned $32,969.-00, which is the figure reflected by the jury's verdict.

2. Alaska Brick Co. v. McCoy, 400 P.2d 454, 457 (Alaska 1965).

3. Ahlstrom v. Cummings, 388 P.2d 261, 262 (Alaska 1964).

a load for the long haul. But he also testified that his understanding of the agreement was for 50 cents a yard for the short haul and 90 cents a yard for the long haul, and he had converted this into certain amounts for each load apparently on the basis that each load consisted of 10 yards. The evidence was in dispute as to the number of yards of fill in a truckload. Evidence on behalf of Stewart & Fritz tended to show that each load consisted of 3 loader buckets, and that this amounted to 7 yards of fill. On the other hand, Castle testified that each loader bucket held 3 yards, which would mean that with 3 loader buckets for each load a load would consist of 9 yards.

This evidence, together with Castle's testimony as to the 50 cents and 90 cents a yard payments to be made for the short and long hauls, respectively, would mean that the jury had reason for finding that payment was to be made on the basis of 9 yards for each load at the 50 cents and 90 cents figures testified to. Furthermore, this also shows an evidentiary basis for a determination that payment was to be made on the basis of uncompacted yardage, i. e., on the basis of the number of yards of loose fill in each truckload. Castle's testimony that payment was to be made on the basis of a certain amount per yard, which he converted into a certain amount for each load, could be construed by the jury as meaning that Castle understood the agreement as contemplating payment on the basis of each truck load of fill before it was dumped at the job site and compacted. Unless this is what Castle understood the agreement to be, there would be no point to his converting the price per yard to a certain sum per load. This could indicate to the jury that Castle understood that payment was to be made on the basis of the number of yards of fill that was contained in a truck at the time the truck was loaded, and not the number of yards of fill after dumping and compaction.

There was an evidentiary basis for the jury's decision, which turned upon disputed facts. We hold that the verdict was not contrary to the weight of the evidence. As to Stewart & Fritz, the judgment must be affirmed.

*United Bonding's Appeal*

Castle's complaint alleged that United Bonding had "issued a bond on behalf of Stewart & Fritz, Inc. * * * in connection with a contract with the State of Alaska * * *." This allegation was admitted by United Bonding in its answer to the complaint. In addition, the complaint alleged that pursuant to statute Stewart & Fritz, as principal, and United Bonding, as surety, had "delivered to [the] State the Performance and Payment bonds, conditioned as required by * * * statute." This allegation was denied in United Bonding's answer to the complaint on the ground that United Bonding lacked knowledge or information sufficient to form a belief as to the truth of such allegation.

At the close of Castle's evidence, United Bonding's counsel said, "We move for judgment at this time." No reasons were stated. The court denied the motion. At the close of all the evidence, counsel moved for "dismissal as to United * * * on the basis that this liability is based upon a bond and the bond has not been put into evidence, there's no testimony on the bond. * * *" The court stated: "I'm going to submit the case to the jury * * I'm going to order the bond to be filed. * * *" After the jury had returned its verdict against Stewart & Fritz and United Bonding, the court reopened the case to permit the introduction in evidence of the original payment bond which had been in the possession of the state. United Bonding's motion for judgment notwithstanding the verdict was denied.

On this appeal United Bonding contends that Castle failed to introduce any evidence as to the execution, delivery and acceptance of the payment bond, and therefore by the time the case went to the jury there had been presented nothing in the way of evidence from which the jury could find that United Bonding was obli-

gated to Castle as a surety of Stewart & Fritz. For this reason United Bonding contends that the court erred in refusing to grant judgment in its favor. In addition, United Bonding argues that the court, in permitting the introduction in evidence of the bond after the jury had rendered its verdict, denied United Bonding a jury trial on the issues of execution, delivery and acceptance of the bond.

 In interrogatories propounded to United Bonding by Castle this question was asked:

2. Did you furnish a payment bond for State of Alaska * * * said bond having been executed on February 12, 1965 and signed by Francis Sprague, attorney in fact, and attested by Mary Miller?

The answer of United Bonding was "yes". This constituted an admission by United Bonding that a payment bond had been executed and delivered to the state on the project involved in this action.

The pre-trial order provided in part:

The bonding company, United Bonding Insurance, has claimed for indemnification from the prime contractor and it has been stipulated between the bonding company and the prime contractor that any judgment recovered by the plaintiff against the bonding company may be recovered against the prime contractor.

If there were to be indemnification from Stewart & Fritz to United Bonding on any judgment found against the latter, this implies that there was a principal-surety relationship between the parties, which in turn leads to the conclusion that a payment bond was in effect. In addition, no mention was made in the pre-trial order that execution or delivery or acceptance of the bond was in issue. The purpose of pre-trial is to clearly define all issues to be tried and decided—hidden issues or defenses are not to be tolerated.[4] Issues not presented at pre-trial may not be later raised at the trial.[5] United Bonding was precluded from raising an issue as to the execution or delivery or acceptance of the payment bond in question by reason of its failure to raise the issue at pre-trial proceedings.

 There is yet another reason why it was unnecessary for Castle to prove by direct evidence the existence of the payment bond. AS 36.25.010(a) requires that before a state contract may be awarded, the contractor must furnish to the state a payment and performance bond.[6] The evidence shows that the state made progress payments to Stewart & Fritz, the prime contractor. Since under the statute just mentioned the awarding of the contract, and necessarily the making of payments under the contract, is conditioned upon the furnishing of a payment and performance bond, it may be concluded from the fact that payments were made under the

4. Lumbermens Mut. Cas. Co. v. Continental Cas. Co., 387 P.2d 104, 111 (Alaska 1963).

5. Blanken v. Bechtel Properties, Inc., 194 F.Supp. 638 (D.D.C.1961), aff'd, 112 U.S. App.D.C. 97, 299 F.2d 928 (D.C.Cir. 1962) ; McCarthy v. Lerner Stores Corp., 9 F.R.D. 31 (D.D.C.1949).

6. AS 36.25.010(a) provides:
Before a contract exceeding $2,000 for the construction, alteration, or repair of a public building or public work of the state is awarded to a contractor, the contractor shall furnish to the state the following bonds, which become binding upon the award of the contract to that contractor:

(1) a performance bond with a corporate surety qualified to do business in the state, or at least two individual sureties who shall each justify in a sum equal to the amount of the bond; the amount of the performance bond shall be equivalent to the amount of the payment bond;
(2) a payment bond with a corporate surety qualified to do business in the state, or at least two individual sureties who shall each justify in a sum equal to the amount of the bond for the protection of all persons who supply labor and material in the prosecution of the work provided for in the contract * * *.

contract that the required bond had been furnished the state. Such a conclusion is based upon the presumption that official duty has been regularly performed [7]—that state officials would not have awarded the contract and made progress payments to Stewart & Fritz had the required bond not been filed.

There was a sufficient basis for the jury to find that United Bonding was obligated to Castle as surety on a payment bond without the necessity of Castle introducing the bond in evidence. Hence, United Bonding was not denied a jury trial on the issue of the execution, delivery and acceptance of the bond, and the trial court did not err in refusing to grant judgment for United Bonding.

The judgment is affirmed.

7. Irwn v. Radio Corp. of America, 430 P.2d 159, 161 (Alaska 1967).