Jacqueline JAKOSKI and Carl Jakoski,
Appellants,

v.

H. Russel HOLLAND, Appellee.

H. Russel HOLLAND, Cross-Appellant,

v.

Jacqueline JAKOSKI and Carl Jakoski,
Cross-Appellees.

Nos. 1724 and 1795.

Supreme Court of Alaska.

March 11, 1974.

O. Nelson Parrish and Robert A. Parrish, Fairbanks, for Jacqueline Jakoski and Carl Jakoski, appellants and cross-appellees.

Charles Hagans, Sanford M. Gibbs, Hagans, Smith & Brown, Anchorage, for H. Russel Holland, appellee and cross-appellant.

Before RABINOWITZ, Chief Justice, and CONNOR and BOOCHEVER, Justices.

## OPINION

BOOCHEVER, Justice.

Jacqueline and Carl Jakoski appeal from the August 9, 1972 final judgment in the superior court, pursuant to a jury award to them of $18,000 in their action against H. Russel Holland. The main appeal raises two evidentiary questions—whether the trial judge erroneously excluded relevant evidence and admitted irrelevant, prejudicial evidence—and challenges the award as being contrary to the weight of the evidence. The cross-appeal initiated by defendant Holland raises the question of whether Mr. Jakoski's loss of consortium claim was barred by the running of the statute of limitations and challenges the awards of plaintiffs' and defendant's attorneys' fees.

On November 13, 1968 at about 8:15 a. m., Jacqueline Jakoski was proceeding north on the Seward Highway near its intersection with Lewis Lane on the outskirts of Anchorage in her 1963 Mercedes sedan. There she stopped her vehicle to avoid colliding with a possibly-disabled car which had itself stopped in her lane. H. Russel Holland was also proceeding north on the Seward Highway some distance behind Mrs. Jakoski. He first noticed the stationary Jakoski vehicle when approximately 100 feet from it. He immediately applied the brakes and skidded approximately 27 paces (in the estimate of the state trooper who investigated the accident) before colliding with the rear end of the Jakoski Mercedes.

On September 11, 1970, Mrs. Jakoski filed a complaint charging Holland with negligence. On November 12, 1971, a pretrial conference was held. Pursuant to the pre-trial order on November 18, 1971 (3 years and 5 days after the date of the accident), Mrs. Jakoski filed an amended complaint adding a claim by her husband Carl Jakoski for loss of consortium. This added claim was based on the same facts as Mrs. Jakoski's personal injury claim.

On January 24, 1972, Holland filed an offer of judgment pursuant to Civil Rule 68 offering entry of judgment against him for $25,000 plus $2,600 in costs and attorney's fees. The Jakoskis rejected the offer by failing to respond within the 10-day period prescribed by Civil Rule 68.

On January 25, 1972, Holland moved to dismiss Carl Jakoski's consortium claim as barred by the applicable 2-year statute of limitations, AS 09.10.070. The court took the motion under advisement but never ruled on it. Undaunted, Holland moved on March 6, 1972 for partial summary judgment to dismiss the consortium claim on the same grounds. After argument by both parties, the court denied the motion.

Trial commenced on March 28, 1972. Mrs. Jakoski attempted to demonstrate that the accident had caused cervical nerve root damage, severe chronic headaches and resulting mental and physical impairment. In the course of plaintiffs' case, their counsel sought to introduce testimony of certain lay witnesses, fellow employees of Mrs. Jakoski both before and after the 1968 accident, to show that in their opinions she was unemployable after the accident because she was suffering great pain from headaches. The court sustained defense objections and ruled that the lay witnesses must confine their testimony to their observations and would not be allowed to relate their opinions as to whether she was able to work.

During cross-examination of Mrs. Jakoski, defense counsel sought to question her about her son's having been indicted in April 1968 for the felony of assault with a dangerous weapon. Over objection of plaintiffs' counsel, the court allowed the questioning. Mr. Jakoski, subject to the same objection, was also questioned regarding the criminal proceedings against his son.

In summation to the jury, plaintiffs' counsel called for a verdict of $545,000. Defense counsel, by contrast, suggested that if the jury believed Holland liable, they should return a verdict of $15,000 for Mrs. Jakoski and $2,000 for Mr. Jakoski. The jury returned its verdict on April 10, 1972, awarding Mrs. Jakoski $16,000 and Mr. Jakoski $2,000 on his consortium claim.

From the judgment entered pursuant to the jury verdict, the Jakoskis' appeal and Holland cross-appeals.

I

## EXCLUSION OF LAY TESTIMONY

Briefly recapitulating, the court allowed Mrs. Jakoski's co-workers, Carol Sturgeon and Ann Reid, to relate their observations but upheld objections to their expressing an opinion on her ability to work. The Jakoskis argue that the prevailing authority favors receiving lay opinion in such circumstances, citing 32 C.J.S. Evidence § 546(23) at 164–165: ·

Such an observer may also infer and state that a person's ability to help himself or to work has or has not been impaired; that he continued his usual work in the customary manner; that after the injury he tried to do all the work he could; and that certain work exhausted a diseased person and required nearly all the strength he had, as bearing on the physical condition of another. The witness may also state the inability of such person to follow an occupation because of his condition and whether there has or has not been an impairment of his faculties, or the use of his limbs or other parts of his body, or his earning capacity (footnotes omitted).

In Houger v. Houger,[1] we addressed a nearly identical issue. *Houger* was a divorce case, which raised, *inter alia,* the question of the fairness of a child support decree. The trial court had modified the decree on the ground that a recent automobile accident had rendered the father medically unfit to work. Faced with the subsidiary question of whether the father's father and brother, who were his fellow workers, were competent to testify that since the accident he was incapable of working in their business as a floor finisher or carpenter, we held that they were, stating:

If a question of the nature or character of appellee's injuries were involved,

---

1. 449 P.2d 766 (Alaska 1969).

some special skill would be needed, and expert testimony by someone qualified in medical science would be required. But as Professor Wigmore points out, there are numerous related matters involving health and bodily soundness, not exclusively with the domain of medical science, upon which the ordinary experience of everyday life is entirely sufficient. One of such matters is a man's capacity or lack of it to perform certain types of work as it relates to an injury he has received. On this subject there is probably no one better informed than the injured man himself, or his associates who observe his efforts to perform such work.[2]

■ We agree with the appellants that *Houger* is dispositive, and that the lower court erred in excluding the proffered opinion testimony of Mrs. Jakoski's co-workers, Sturgeon and Reid. Their testimony, as far as we can perceive from the record before us, would not have included technical assessments of the nature or character of Mrs. Jakoski's injuries. Rather, these witnesses would have testified only that in their opinion, appellant was experiencing such pain in the days immediately following the accident that she was unable to work at all. We think that there are only two foundational prerequisites to the admission of lay opinion testimony concerning the effect of an injury upon an individual's capacity to perform certain types of work. The proponent must establish (1) that the witness had sufficient opportunity to observe the victim in pain or otherwise exhibiting inability to perform the task and (2) that the witness was knowledgeable concerning the demands of the victim's employment at the time of his observation.[3] Mrs. Jakoski's co-workers satisfy this test; but we do not limit the

application of the test to co-workers. Under proper circumstances, teachers, teammates and even competitors, to name a few, may qualify.

In reaching our conclusion on this issue we have given careful consideration to the purpose for which appellants sought to introduce the excluded testimony. The record indicates that Mrs. Jakoski resigned from her position with the Rural Community Action Program within a month of the November 13, 1968 accident. Sturgeon and Reid had only a brief period after the accident in which to observe Mrs. Jakoski at work. They would, therefore, have been incompetent to testify as to the long-range effects of the injuries on her ability to perform her job, and it would not have been error for the court to have excluded their testimony had this been the purpose for which appellants sought to introduce it. Appellants, however, sought to use the Sturgeon and Reid testimony only as evidence going to Mrs. Jakoski's ability to perform her work *immediately after the accident*. We think it was perfectly proper to introduce their testimony for such a limited purpose.

■ We hold, however, that the Jakoskis were not prejudiced by the exclusion of the testimony. The proffered testimony applied only to the period immediately after the accident; Holland did not challenge the inability of Mrs. Jakoski to work in that period, but attributed it to factors other than the accident.

Moreover, the specific opinion testimony was obtained from her supervisor Thomas Echols:

Q Now, did you form an opinion as to whether or not, based on your observation of her, that she was capable then of doing her work?

---

2. *Id.* at 769, citing 2 Wigmore, Evidence § 568(1) at 660 (3d ed. 1940).

3. We leave open the question posed by a witness who becomes knowledgeable concerning the demands of the victim's employment subsequent to observing the victim in pain. We note without specifically holding that the

shorter the interval between observation and knowledgeability, the stronger the case for admitting the witness's testimony. Of course, even after the evidence has been allowed to come in, its weight is to be determined by the trier of fact.

THE COURT: You're talking now about before or after?

Q  Following the accident.

A  No, as I repeated—as I told you a couple of times, I came to the conclusion she was not capable of performing.

The witnesses Sturgeon and Reid also either expressed an opinion or gave substantially similar testimony to the effect that Mrs. Jakoski was unable to perform her job in the month following the accident. Mrs. Sturgeon stated: "[W]ell, Mrs. Jakoski would try to come in and work but she couldn't because she was in pain and she was going to the doctor for treatment . . ." and "she would come into the office to work and couldn't because she—you could tell she was in pain and hurting." She further testified:

Q  How would you describe the effect of those headaches upon her before the accident? Did they effect her before the accident and if so, what did you observe about that?

A  Well, she was able to work and the —after the accident she definitely wasn't able to work.

Mrs. Reid testified pertaining to Mrs. Jakoski's work after the accident:

[Y]ou'd give her something to do, she'd start it but she couldn't complete it, I mean she'd set there, shake, our office was one huge mass of machinery, constant noise, and you'd look at her and she'd be off in a daze . . .

The court then struck the additional portion of Mrs. Reid's testimony stating: "in my opinion, she wasn't able to work."

Alaska Civil Rule 61 provides that:

No error in either the admission or the exclusion of evidence . . . is ground for . . . setting aside a verdict . . . unless refusal to take such ac-

tion appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Here Holland never contended that Mrs. Jakoski was capable of working in the period immediately after the accident, and substantial lay testimony was given to the effect that she was unable to work. The proffered testimony was cumulative at best, and we have previously held that error in excluding such matter is harmless.[4] We hold that in this case the error in failing to permit the addition of opinion testimony by the witnesses Sturgeon and Reid was harmless.

## II

## ADMISSION OF TESTIMONY CONCERNING INDICTMENT OF MRS. JAKOSKI'S SON

Judge Davis permitted defense counsel, over objection by plaintiffs' counsel, to question Mrs. Jakoski about her 19-year-old son's having been indicted in April 1968 on two counts of assault with a dangerous weapon. The Jakoskis argue that the mere introduction of such evidence is a patently prejudicial, indirect and irrelevant attack on Mrs. Jakoski's integrity. They concede that, prejudicial impact notwithstanding, the evidence would be admissible if it contained sufficiently great counterbalancing probative value. But because Holland had not adduced medical evidence relating Mrs. Jakoski's condition to the indictment of her son, the Jakoskis contend that the evidence has no probative value whatever to counter its prejudicial impact.

They support their position by citing Smith v. German.[5] Plaintiff Smith alleged that he suffered a severe personality change as a result of injuries sustained in a 1962 automobile accident. Defendant

---

4. Mallonee v. Finch, 413 P.2d 159, 164 (Alaska 1966); *see also* Grant v. Pilgrim, 95 F.2d 562, 572 (9th Cir. 1938); *cf.* Otis Elevator Co. v. McLaney, 406 P.2d 7, 11–12 (Alaska 1965); Gregory v. Padilla, 379 P.2d 951, 954 (Alaska 1963).

5. 434 Pa. 47, 253 A.2d 107 (1969).

German introduced, over objection, testimony which Smith had given in his own 1964 divorce proceeding, for the purpose of showing that Smith's personality change was caused by his marital difficulties, not the accident. The Supreme Court of Pennsylvania considered this evidence to be highly prejudicial and held that its admission—without any expert testimony to establish a causal connection between the marital difficulties and the personality change—was improper. Citing a 1957 decision, the court said:

"Where there is no obvious causal relationship [between the event demonstrated and the result sought to be proved], unequivocal *medical* testimony is necessary to establish the causal connection." [6]

Only where the event and the result are "so closely connected and so readily apparent" that a layman could diagnose (except by guessing) the causal connection may expert testimony be dispensed with.[7]

■ Returning to the instant case, the Jakoskis argue that the admission of questions concerning the son's indictment encouraged the jury to speculate on its effect. They argue that, absent expert testimony establishing a causal connection, such speculation is clearly improper, because the connection is not so readily apparent that a layman could diagnose it.

We are not persuaded. Placing the challenged line of questioning into somewhat fuller perspective, we note that plaintiffs' counsel told the jury in his opening statement that prior to the accident the Jakoskis had led a normal, happy home life but that one of the sons had "been troublesome."

Several of the witnesses corroborated the Jakoskis' happy home life, but none apparently knew of the troublesome son. Most importantly, in her direct testimony, Mrs. Jakoski discussed her home and family life and her children. Alaska Civil Rule 43(g)(7) specifically allows an adverse party to "cross examine a witness as to *any matter stated in the direct examination or connected therewith . . .* " (emphasis added). Patently, Mrs. Jakoski's testimony on direct examination invited further inquiry into her home and family life on cross-examination.

■ Turning to the issue of probative value, we are satisfied that the indictment of her 19-year-old son and his subsequent trial in July 1968 bore directly on the central question of whether the November accident or other events caused her headaches and accompanying mental and physical disabilities. The crux of our inquiry then is whether the defense should have been required to adduce expert testimony to establish a causal connection. We think that such testimony was not required. This is not to say that we completely reject the test set forth by the Pennsylvania Supreme Court in *Smith* and *Florig.* Rather, we think that the Pennsylvania Supreme Court applied its test too rigorously and in so doing needlessly excluded relevant testimony.

The probative value of the son's criminal prosecution is merely a variation on the theme which has already been treated in this appeal: when does ordinary experience suffice as a basis for a witness's testimony concerning medically-related matters? [8] Wigmore argues that, "Great

---

6. Smith v. German, 253 A.2d at 108, quoting Florig v. Sears, Roebuck & Co., 388 Pa. 419, 130 A.2d 445, 447 (1957) (emphasis original).

7. Smith v. German, 253 A.2d at 109, citing Florig v. Sears, Roebuck & Co., 130 A.2d at 447.

8. When facts which may bear upon physical or mental health are elicited from a party, it is the jury which must, as reasonable laymen, form an opinion as to their meaning. In contrast, when a layman is permitted to state a conclusion respecting medical matters, the conclusion is drawn by the witness, and the jury's role is to assess the credibility of the opinion by viewing the underlying facts and circumstances and weighing the factors which ordinarily bear upon witness credibility. This contrast is the only theoretical distinction between the problem of Mrs. Jakoski's testimony on cross-examination and the problem of her co-worker's testimony; it is a distinction without legal significance.

liberality should be shown by the [c]ourts in applying [the] principle [that the ordinary experience of everyday life is entirely sufficient], so that the cause of justice may not be obstructed by narrow and finical rulings." [9] We agree with Wigmore's prescription.[10] The indictment of a child, especially in the context of a closely-knit family unit, is so potentially disruptive of the parent's emotions that a layman could reasonably discern a causal connection. Hence we might restate the *Smith-Florig* test to require expert medical testimony to establish a causal connection only where there is no reasonably apparent (as distinguished from obvious) causal relationship between the event demonstrated and the result sought to be proved. Measured against this standard, the lower court did not err in allowing the challenged questions.

## III

### VERDICT CONTRARY TO WEIGHT OF THE EVIDENCE

▌▌ The Jakoskis contend that the total award of $18,000 was inadequate and contrary to the weight of the evidence. We note initially that no objection to the amount of the award was made before the trial judge. There was no motion for new trial or for an addition to the award. We have held in Heacock v. Town:[11]

The question of whether damages are inadequate, or excessive, is in the first instance committed to the discretion of the trial judge and should be raised on a motion for a new trial. The reason for this is that the judge who presided at the trial and observed all the events that occurred there, and who heard the witnesses and observed their demeanor, is in a

far better position than an appellate court to know whether in the light of all that transpired at the trial the damages awarded by the jury were so wholly inconsistent with, or so much less than the proof of damages as reflected by the evidence as to be fairly called inadequate.

We have, nevertheless, reviewed the record to ascertain whether the evidence was legally sufficient to support the verdict. In so doing, we are required to take the evidence and all inferences reasonably deducible therefrom in the light most favorable to the appellee.[12] While the issue of damages was hotly contested, we find that there was competent evidence and reasonable inferences deducible therefrom to support the verdict.

## IV

### THE CONSORTIUM CLAIM: RELATION BACK OF AMENDMENT UNDER CIVIL RULE 15(c)

Jacqueline Jakoski filed her complaint for damages approximately 2 months before the 2-year statute of limitations of AS 09.10.070 had expired. Pursuant to the pretrial order, Mrs. Jakoski filed an amended complaint adding her husband Carl as a separate party plaintiff and adding his claim for loss of consortium 3 years and 5 days after the original cause of action accrued. Holland contends that the consortium claim was barred by the statute of limitations, could not be revived by reference to the relation-back provision of Civil Rule 15(c), and should have been dismissed on his motion for partial summary judgment.

▬ We do not agree. Alaska Civil Rule 15(c), on its face, permits relation back so as to escape the statute of limita-

---

9. 2 Wigmore, Evidence § 568(1) (3d ed. 1940).

10. Alaska Civil Rule 43(b) states in part: "the principle which favors the reception of the evidence shall govern".

11. 419 P.2d 622, 623–624 (Alaska 1966) (footnotes omitted); *cf*. Bolden v. City of Kodiak, 439 P.2d 796, 800 (Alaska 1968).

12. Graham v. Rockman, 504 P.2d 1351, 1353–1354 (Alaska 1972); United Bonding Insurance Co. v. Castle, 444 P.2d 454, 455 (Alaska 1968); Bolden v. City of Kodiak, 439 P.2d at 801.

tions in cases like the one at bar. The rule provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

Holland concedes that Mr. Jakoski's cause of action for loss of consortium "is in part related to the principal case, and any defense that bars the injured spouse from recovering bars a claim for loss of consortium." Inasmuch as the identical conduct, transaction, and occurrence from the basis for Mr. Jakoski's consortium claim and for his wife's personal injury claim, we are not persuaded that Holland can reasonably rely on the bar of the statute of limitations.

Our recent decision in Burns v. Anchorage Funeral Chapel [13] is dispositive of the question. In that case, the administrator of the Estate of Wilma Fuglemsmo sought to add decedent's next of kin as plaintiffs. The superior court denied the motion to add the parties plaintiff on the ground that any claim the next of kin might have possessed was barred by the controlling statute of limitations. In reversing, we inquired into the policies embodied in Alaska Civil Rule 15(c):

> This rule of civil procedure and the policy it reflects is of controlling significance in the decision of this amendment issue. Count II of the complaint sufficiently identified the specific facts upon which the claim for relief was based, the persons injured, and further specified that recovery was sought for their benefit. *Thus in the context of the pleadings in this case, Anchorage Funeral was sufficiently informed of the nature of the asserted claim for relief so that no new claim for relief would have been injected by virtue of an amendment which added*

*or substituted the next of kin as parties plaintiff.* Our analysis is in accord with the basic rule applied by federal courts in determining whether an amendment introduces a new claim for relief. The federal authorities hold that if the amendment is based on the same specific conduct of the defendant upon which the original claim for relief was founded, no new claim for relief is stated by the amendment. *We are thus led to the conclusion that an amendment providing for the addition of the next of kin as parties plaintiff would not have given rise to a new claim for relief since the amended Count II would have still been based upon the same acts relied upon in the original pleading of which Anchorage Funeral had ample notice.* Under the provisions of Civil Rule 15(c) such amendment relates back to the date of Burns' original complaint. Since the amendment adding parties plaintiff relates back to the date of the original complaint, the two year tort statute of limitations is no bar to prosecution of the claim for relief under Count II.[14]

As in *Burns*, the salient fact here is that the amendment adding Mr. Jakoski's consortium claim was based upon the same conduct, transaction, and occurrence relied upon in the original pleading, Holland had ample notice of the cause of action. Under the provisions of Alaska Civil Rule 15(c) and our ruling in *Burns*, we hold that amendment here did not state a new claim for relief but did relate back to the date of the original complaint and was not barred by the statute of limitations.[15] There was no error.

## V

### AWARD OF ATTORNEY'S FEES

We are again confronted with another aspect of the oft-litigated question of allowance of attorney's fees.[16] On January

---

13. 495 P.2d 70 (Alaska 1972).

14. *Id.* at 75–76 (emphasis added, footnotes omitted).

15. *Cf.* Estate of Thompson v. Mercedes-Benz, Inc., 514 P.2d 1269 (Alaska 1973).

16. *See* Cooper v. Carlson, 511 P.2d 1305, 1306, n. 1 (Alaska 1973) and cases there cited.

24, 1972, Holland made an offer pursuant to Alaska Civil Rule 68 to allow judgment to be entered against him for the sum of $25,000 plus $2,600 in costs and attorney's fees. The Jakoskis did not accept the offer within the 10-day prescribed period; thus the offer was properly regarded as rejected. The jury awarded $16,000 for Mrs. Jakoski's injuries and $2,000 for Mr. Jakoski's loss of consortium, the total of $18,000 being less than the amount of the offer of judgment.

The trial judge awarded the Jakoskis an allowance for attorney's fees for services rendered up to the time that the offer of judgment was made in the amount of $2,325. Holland was awarded $6,250 for fees incurred after the date of the offer. He has cross-appealed, contending that there was no proper basis for making the award to the Jakoskis and that the award to him was inadequate in view of the amount of the Jakoskis' claim and a detailed affidavit indicating that post-offer-of-judgment services valued at $11,622.10 were rendered by Holland's attorney.

Alaska Civil Rule 68 specifies:

At any time more than 10 days before trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. . . .

█ Since the rule provides that the offer allow judgment "with costs then accrued" and since costs under Alaska Civil Rule 82(a) [17] include the allowance of an attorney's fee, it is clear that the Jakoskis were entitled to an award for attorney's fees incurred to the date of the offer of judgment. In Miklautsch v. Dominick,[18] we held that Rule 68 is distinguishable from Rule 82 and 54(d) [19] in that a determination as to the prevailing party does not control the award of costs. In that case, Miklautsch made an offer of judgment in the amount of $2,500. Dominick secured a

---

17. Rule 82(a) provides:

(a) *Allowance to Prevailing Party as Costs.*

(1) Unless the court, in its discretion, otherwise directs, the following schedule of attorney's fees will be adhered to in fixing such fees for the party recovering any money judgment therein, as part of the costs of the action allowed by law:

*Attorney's Fees In Average Cases*

| | Contested | Without Trial | Non-Contested |
|---|---|---|---|
| First $ 2,000 | 25% | 20% | 15% |
| Next $ 3,000 | 20% | 15% | 12.5% |
| Next $ 5,000 | 15% | 12.5% | 10% |
| Over $10,000 | 10% | 7.5% | 5% |

Should no recovery be had, attorney's fees for the prevailing party may be fixed by the court as a part of the costs of the action, in its discretion, in a reasonable amount.

(2) In actions where the money judgment is not an accurate criteria for determining the fee to be allowed to the prevailing side, the court shall award a fee commensurate with the amount and value of legal services rendered.

(3) The allowance of attorney's fees by the court in conformance with the foregoing schedule is not to be construed as fixing the fees between attorney and client.

18. 452 P.2d 438 (Alaska 1969).

19. Alaska Civil Rule 54(d) specifies:
Except when express provision therefor is made either in a statute of the state or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs. The procedure for the taxing of costs by the clerk and review of his action by the court shall be governed by Rule 79.

directed verdict on the issue of liability, but the jury thereafter returned a verdict awarding no damages. She thus prevailed on the liability issue but received less than the offer of judgment. The trial court found Dominick to be the prevailing party and awarded her costs and attorney's fees to the date of the offer. The court refused to award Miklautsch costs or fees. Miklautsch appealed the refusal to allow costs and attorney's fees for the period after the date of the offer. We held that Miklautsch was entitled to an appropriate award for the costs and fees incurred after the offer. Thus Rule 68 confers a limited "prevailing party" status upon the defendant whose loss at trial is less than his offer of judgment.

In tailoring "prevailing party" concepts to the specific provisions of Rule 68, the trial court may utilize considerations set forth in Rule 82 in exercising its discretion as to the amount of attorney's fees to be awarded. The matter of awarding attorney's fees is committed to the sound discretion of the trial court, and we shall interfere only when satisfied that the lower court abused its discretion, that is, where the fee determination is "manifestly unreasonable." [20]

The Jakoskis presented no itemization of attorney's services rendered prior to the date of the offer of judgment. Judge Davis allowed them the amount they would have been entitled to under Rule 82(a) without trial, based on the eventual verdict of $16,000 to Mrs. Jakoski and $2,000 to ·Mr. Jakoski. In reaching this decision, he doubtlessly relied on counsel's statement that the bulk of his work was performed prior to receipt of the offer. As is customary in personal injury cases, plaintiffs' counsel was retained on a contingent fee arrangement and therefore did not keep time records. The Jakoski case was filed on September 11, 1970 and the offer of

judgment was made on January 24, 1972, more ·than 16 months later. During that period of time, counsel for plaintiffs filed many pleadings, prepared a pre-trial memorandum, attended a pre-trial conference, noticed 6 depositions for January 24, 25 and 27, presumably prepared for the taking of those depositions, and prepared lengthy answers to interrogatories including a detailed itemization of damage claims. Counsel doubtlessly had lengthy conferences with his clients and interviews with other witnesses. In a contingent fee case, the plaintiff's counsel ordinarily keeps no time records; nevertheless, it would be preferable for him to submit an affidavit outlining in general the scope of services rendered prior to the date of the offer of judgment. Based on the record here, however, we do not find that the lower court abused its discretion in awarding $1,925 as a fee to Mrs. Jakoski and $400 to Mr. Jakoski.[21]

We next are required to review the allowance of $6,250 in attorney's fees awarded Holland, who contends that he should have been awarded a minimum of $11,622 for the period of time subsequent to the date of offer. In determining what he considered to be a reasonable fee, Judge Davis calculated:

| | |
|---|---:|
| 8 days of trial at $300 per day | $2,400 |
| Depositions taken | 1,162 |
| Other necessary legal activities (witness interviews, trial preparation, research) | 2,688 |
| | $ 6,250 |

■ In ascertaining the amount of attorney's fee to be allowed a defendant successful in holding a verdict to less than his offer, the trial judge should use the same general criteria as in a case where a defendant is the prevailing party. We recently discussed such criteria in Malvo v.

**20.** Malvo v. J. C. Penney Co., 512 P.2d 575, 586–587 (Alaska 1973) ; Palfy v. Rice, 473 P.2d 606, 613–614 (Alaska 1970).

**21.** In that regard, we note that the total sum of $2,325 is less than the sum of $2,600 included in Holland's offer to cover costs

and attorney's fees to the date of the offer. The $2,600 sum is the amount to be allowed under Rule 82(a) for attorney's fees on a "without trial" basis on the offered sum· of $25,000 so that costs incurred to that date must have been considered to be negligible.

J. C. Penney Co.[22] We there stated that it is "manifestly unreasonable" automatically to award the full amount of attorney's fees incurred by a prevailing party, although we recognized that there might be situations where such an award would be justified. We reiterated that the allowance was for the purpose of *partially* compensating a prevailing party.

▮ Holland emphasizes the size of plaintiff's claim. Counsel for plaintiffs asked for a verdict of $545,000. But if defendant had seriously considered the case to have a value even remotely approaching that figure, he probably would have offered more than $25,000, particularly since plaintiff had a strong case on the issue of liability. By analogy, if $25,000 was to be taken as the value of the case, Rule 82(a) provides for a plaintiffs' fee after trial of $3,350 covering the entire period from the filing of the case through judgment. In light of these considerations, we hold that the trial court did not abuse its discretion in awarding $6,250 [23] to the defendant for services rendered after the date of the offer of judgment.

Affirmed.

CONNOR, J., dissents.

ERWIN and FITZGERALD, JJ., not participating.

22. 512 P.2d at 586–588.

23. We further note that the awards allowed by Judge Davis are consistent with the purpose of Rule 68 in encouraging settlements. Had no offer been made and rejected, plaintiffs would have been entitled to fees of $2,450 and $500 respectively, a total of $2,950. Defend-

CONNOR, Justice (dissenting).

I respectfully dissent from the portion of the majority opinion which holds that it was harmless error to exclude the proffered opinion testimony of the witnesses Sturgeon and Reid. In my view their testimony was not cumulative to that of the witness Echols.

Mr. Echols admitted on cross-examination by defense counsel that Mrs. Jakoski would have had to have been on sick leave for a week before he would ever have noticed it. In contrast with these other witnesses, Sturgeon and Reid emerge as having observed the effects of Mrs. Jakoski's injuries from a unique vantage point. Sturgeon faced Mrs. Jakoski across their desks. Reid worked with Mrs. Jakoski in the two-room office which housed their section and was in constant contact with her both before and after the accident. Thus, working literally along-side her and mindful of her day-to-day condition, Sturgeon and Reid were able to provide important details about which none of the other witnesses were or could have been knowledgeable. For these reasons I view the exclusion of the testimony as affecting the substantial rights of Mrs. Jakoski and as constituting reversible, not harmless, error.

With the balance of the majority opinion I agree.

ant would have received no award for fees. Also, had plaintiffs accepted the offer, they would have received a judgment of $25,000 rather than $18,000. Both with reference to the allowance of costs and fees and the amount of recovery, there was a substantial incentive for settlement.