**CITY OF FAIRBANKS and Jay A. Noll, Appellants,**

v.

**Frederick SMITH and Jacquelyn Smith, Appellees.**

**Frederick SMITH and Jacquelyn Smith, Cross-Appellants,**

v.

**CITY OF FAIRBANKS and Jay A. Noll, Cross-Appellees.**

**Nos. 2077, 2079.**

Supreme Court of Alaska.

Aug. 26, 1974.

Dennis E. Cook, Fairbanks, for appellants and cross-appellees.

James R. Blair, Fairbanks, for appellees and cross-appellants.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

RABINOWITZ, Chief Justice.

In October, 1970, Frederick Smith was injured when an automobile in which he was a passenger was hit from behind by a City of Fairbanks dump truck. Thereafter, Frederick Smith instituted an action seeking damages for his personal injuries; his wife, Jacquelyn, sought damages for loss of consortium. Prior to trial, the City of Fairbanks and its employee-driver of the dump truck conceded liability. After trial by jury on the issue of damages, Frederick Smith was awarded the sum of $77,154.06. The jury returned a separate verdict of zero dollars in regard to Jacquelyn's claim for damages for loss of consortium.

In this appeal the City of Fairbanks takes the position that the jury's award to

Frederick Smith is excessive. Additionally the city contends that the superior court's judgment should be set aside and a new trial granted because the jury returned inconsistent verdicts by virture of awarding Frederick Smith $77,154.06 and awarding Jacquelyn Smith nothing. In her cross-appeal Jacquelyn Smith asserts that the case should be remanded for a new trial solely on the issue of her damages for loss of consortium, since the jury's verdict was contrary to the uncontradicted testimony going to this issue.

 In Fruit v. Schreiner, 502 P.2d 133, 145 (Alaska 1972), this court adopted for jury trials the same test we had previously applied in ascertaining whether damages awarded by a judge without a jury were so excessive as to require a new trial on the damages issue. The appropriate non-jury standard had been articulated in Beaulieu v. Elliott, 434 P.2d 665, 676 (Alaska 1967), where we stated "[w]e shall not set aside an award on a claim of excessiveness unless it is so large as to strike us that it is manifestly unjust, such as being the result of passion or prejudice or a disregard of the evidence or rules of law."

In reviewing the record in order to ascertain whether the evidence is legally sufficient to support the verdict received by Frederick Smith, we are required to view the evidence and all inferences reasonably deducible therefrom in the light most favorable to Smith.[1] Guided by this requirement and the standard adopted in *Fruit* and *Beaulieu,* we hold that the verdict obtained by Frederick Smith was not excessive. Based on the evidence in the record and the reasonable inferences deducible therefrom, we are of the view that the size of the verdict was not a result of passion or prejudice on the jury's part or disregard

by the jury of the evidence or the court's instructions.

The record shows that prior to the accident Smith had enjoyed excellent health, having neither back nor neck problems. In addition to his employment as a special agent for the Federal Bureau of Investigation, he led quite an active life, engaging in hunting, fishing, carpentry, and mechanical work. At the time of the accident in question, Smith was 53 years old and had been a special agent for the F. B. I. for 23 years. The jury was instructed that Smith at the time of trial had a life expectancy of 20.8 years. Smith testified that, as a result of the accident, his neck is stiff most of the time; that he finds it painful to rotate his neck; that he is almost constantly aware of the stiffness; and "from time to time in varying degrees," depending on the weather and the amount of stress to which he is subjected, sustains pain as a result of the condition of his neck.[2] Smith also testified that, because he has found it difficult to get into awkward positions since the accident, he has had to restrict many of his activities such as conducting searches and seizures, firing weapons from a prone position, and teaching defensive tactics to police within the State of Alaska.

Dr. Edwin Lindig, an orthopedic surgeon, diagnosed Smith's condition as "chronic cervical strain syndrome." In his opinion Smith's condition was related to the automobile accident and the chances were "excellent" that Smith's neck condition would worsen in the future.[3] Dr. Lindig further testified that if he were rating Smith for workmen's compensation disability purposes he would evaluate Smith as "40% partial permanent disability." According to Dr. Lindig, "the fact that . . . [Smith] unquestionably has disability means he's going to have pain and

---

1. Jakoski v. Holland, 520 P.2d 569, 575 (Alaska 1974); Graham v. Rockman, 504 P. 2d 1351, 1353–1354 (Alaska 1972); United Bonding Ins. Co. v. Castle, 444 P.2d 454, 455 (Alaska 1968).

2. Smith further testified that in the six to eight months prior to trial he noticed that he had more pain and more rotational neck movement limitation than previously.

3. Dr. Lindig found that Smith had less than 50% normal rotational activity in his neck.

stiffness and spasm of his neck and that he's going to have to in the future, probably restrict a number of his activities."[4]

The City of Fairbanks called only one witness, Dr. Waldo Hanns, an orthopedic surgeon.[5] Dr. Hanns testified that Smith's neck problems were permanent and related to the automobile collision. Dr. Hanns was of the opinion that if he were rating Smith for workmen's compensation purposes he would evaluate Smith's disability at 20% to 30% of the whole man.

Given this factual background we are led to the conclusion that the City of Fairbanks' contention that the verdict is excessive is not borne out by the record.[6] We therefore hold that the verdict and judgment entered in favor of Frederick Smith should not be set aside on the grounds that it was excessive.

■ We note that counsel for the City of Fairbanks did not move for a new trial in the superior court on the ground that the jury's award to Frederick Smith was excessive. In Heacock v. Town, 419 P.2d 622, 623–624 (Alaska 1966), we said:

> The question of whether damages are inadequate, or excessive, is in the first instance committed to the discretion of the trial judge and should be raised on a motion for a new trial. The reason for this is that the judge who presided at the trial and observed all the events that occurred there, and who heard the witnesses and observed their demeanor, is in a far better position than an appellate court to know whether in the light of all that transpired at the trial the damages

awarded by the jury were so wholly inconsistent with, or so much less than the proof of damages as reflected by the evidence as to be fairly called inadequate. *See also* Jakoski v. Holland, 520 P.2d 569, 575 (Alaska 1974); *cf.* Bolden v. City of Kodiak, 439 P.2d 796, 800 (Alaska 1968). We believe the views expressed in *Heacock* are sound. Therefore, in regard to trials commenced after publication of this opinion, we will not review claims of excessive or inadequate damages unless such questions are first raised in the trial court.

■ This brings us to the City of Fairbanks' contention that the superior court's judgment should be vacated and a new trial ordered because the verdicts returned by the jury were inconsistent. The record shows that at the time the jury returned its verdicts, counsel for the City of Fairbanks stated he did not desire to poll the jury, nor did he object to excusing the jury or to the filing of the verdicts. In light of these circumstances we hold that the City of Fairbanks waived the right to challenge the consistency of the verdicts. In reaching a similar conclusion in City of Homer v. Land's End Marine, 459 P.2d 475, 480 (Alaska 1969), we relied in part upon the reasoning of Cundiff v. Washburn, 393 F.2d 505, 507 (7th Cir. 1968), where the court said that counsel's failure to move for resubmission to the jury resulted in waiver because

> [a]ny other decision would hamper the just and efficient operation of the . . . courts. It would encourage jury-shopping by litigants, permitting them to decide whether to take their

---

4. In Dr. Lindig's view Smith's condition was permanent and rendered Smith physically unqualified to be a special agent of the F.B.I.

5. No other witnesses were called or evidence adduced by the City of Fairbanks. Smith produced several witnesses in addition to Dr. Lindig and himself. These witnesses generally corroborated Smith's testimony as to the limitation of activities. One of Smith's witnesses gave his opinion as to the difference in dollar amounts between what Smith would make if allowed to continue in the

F.B.I. versus what he would earn in alternative capacities, taking into account his retirement benefits.

6. In Beaulieu v. Elliott, 434 P.2d 665, 676 (Alaska 1967), we said in regard to pain and suffering:

> [T]here is no fixed measure of compensation in awarding damages for pain and suffering, and such an award necessarily rests in the good sense and deliberate judgment of the tribunal assigned by law to ascertain what is just compensation.

chances on resubmitting the verdict and findings to the jury sitting or remaining silent thereby allowing the entry of judgment and moving for a new trial before a new jury.[7]

■ The final point in this appeal and cross-appeal is Jacquelyn Smith's assertion that she is entitled to a new trial solely on her loss of consortium claim because the damages awarded were inadequate.[8] Applying the criteria to which we have previously alluded, review of the record convinces us that the jury's verdict regarding the loss of consortium claim should not be set aside. Frederick Smith at one point in his testimony admitted that his sexual relations with his wife were "adequate," although he also testified that he felt certain that they were impaired to some extent. Mrs. Smith merely adopted her husband's testimony. The testimony was equally weak as to possible damages incurred from other aspects of loss of consortium such as the right to each other's company, cooperation, affection and companionship. Given the character of the evidence going to the loss of consortium claim, we cannot say that grounds exist for setting aside the jury's verdict.

Affirmed.

7. *See also* Nordin Constr. Co. v. City of Nome, 489 P.2d 455, 472 (Alaska 1971).

8. In Schreiner v. Fruit, 519 P.2d 462 (Alaska 1974), we held that a wife has an independent right to sue for loss of consortium due to negligently inflicted injury to her husband.

The verdict returned by the jury in the case at bar read:

We, the jury, duly impaneled and sworn to try the above entitled cause do hereby find for the plaintiff Jacquelyn Smith on the loss of consortium with her husband and loss of companionship with her husband and against the defendants City of Fairbanks and Jay A. Noll in the sum of 0.00.

This verdict was returned pursuant to the trial court's instruction on loss of consortium which provided:

In determining the amount of damages which plaintiffs are entitled to recover, you should determine the reasonable value of the society, companionship and sexual relationship with each other of which each has been deprived, if any, and the companionship and sexual relationship with each other of which each is reasonably certain to be deprived of in the future, if any. These damages are known as consortium damages.